OPINION.
Davis, J.,
delivered the opinion of the court:
The court has had great difficulty in reaching the facts in this small record; and had it not been that the Board of Indian Commissioners and the Secretary of the Interior, who were in a position to have knowledge of the transactions out of which the claim grew, were of opinion that there were equities in it, we should have felt disposed to dismiss the petition for want of proof of the claim.
In the latter part of October, 1877, the claimant and the Commissioner of Indian Affairs signed a contract in the usual form for the transportation of all such goods and supplies of ¡the Indian Department as might be offered or turned over to *274 tbe claimant for transportation at the several points namecS: and for the rates given in a tabular statement which was made-part of the contract, and was in the following language:
From Fort Peck New Agency, near Poplar River, Montana, to Fort Belk-nap, M. T., at $3.00 per 100 pounds for 66,000 pounds, more or less.
The fourteenth article of the contract provided—
That this agreement is made subject to the approval of the Commissioner of Indian Affairs, the Board of Indian Commissioners, and the Secretary of the Interior.
These several approvals were given as follows: By the Commissioner (being the same who signed the contract) on the 16th February, 1878; by the Board of Indian Commissioners on the 18th of the same February; and by the Secretary of the Interior-on the 11th of the following March. In each case the approval was given subsequent to the events upon which this action is-based.
On the 21st of January, 1878, the claimant’s agent appeared, at the Fort Peck Agency with the carts and wagons necessary to transport 66,000 pounds of freight from that agency to Fort. Belknap, and notified the Indian agent at that place of his readiness to perform the contract.
The Indian agent delivered to the claimant’s -agent 11,235-pounds of bacon for such transportation, and declined to give any more. The claimant transported the 11,235 pounds, and rendered an account for the transportation of the whole 66,000-pounds named in the contract.
The Board of Indian Commissioners allowed the claim to the-extent of the price of the transportation of 11,235 pounds, and rejected it for the remainder.
In reporting their action to the Secretary, the Commissioners-expressed the “ opinion that the contractor is entitled in equity to some allowance by way of damage or demurrage,” and suggested that he “be requested to submit his' claim for damages-with proper evidence to substantiate the same, which [they continued] will receive careful attention of this Board with a. ■ view of'an equitable adjustment.”
The Secretary of the Interior concurred in the opinion that the claimant was equitably entitled to damages, and that he should be invited to furnish proof of the extent of his injury^, but did not agree that the damages could be adjusted in the- ' Department. He proposed to submit the case- to Congress.
*275 In this conclusion that the Department had no authority to settle such a claim the Secretary was right. The laws regulating the payment of money from the Treasury, in the current business of the Government, are reviewed at length by our brother Richardson in his opinion in McKee’s Case (12 C. Cls. R., 555). He shows clearly that the laws provide only for the settlement and payment of accounts. An account is something which may be adjusted and liquidated by an arithmetical com'pution. One set of Treasury officers examine and audit the accounts. Another set is intrusted with the power of reviewing that examination, and with the further power of determining whether the laws authorize the payment of the account when liquidated. But no law authorizes Treasury officials to allow and pass in accounts a number not the result of arithmetical computation upon a subject within the operation of the mutual part of a contract.
Claims for unliquidated damages require for their settlement the application of the qualities of judgment and discretion. They are frequently, perhaps generally, sustained by extraneous proof, having no relation to the subjects of the contract, which are common to both parties; as, for instance, proof concerning the number of horses and the number of wagons and the length of time that would have been required in performing a given amount of transportation. The results to be reached in such cases can in no just sense be called an account, and are not committed by law to the control and decision of Treasury accounting officers.
As is well said by Judge Richardson, in the opinion álready referred to (12 C. Cls. R., 556), this construction—
would exclude claims for unliquidated'damages, founded on neglect or breach of obligations or otherwise, and so, by the well defined and accepted meaning of the word “account” and the sense in which the same and the words “accounting” and “accounting officers” appear to be- used in the numerous sections of the numerous acts of Congress wherein they occur, it would seem that the accounting officers have no jurisdiction of such claims except in special and exceptional cases, in which it has been expressly conferred upon them by special or private acts. And such has been the opinion of five Attorneys-General — all who have officially advised the executive officers-on the subject: Attorney-General Taney in 1832, whose opinion is referred to by Ms successors in office; Attorney-General Nelson in 1844 (4 Opins., 327); Attorney-General Clifford in 1847 (4 Opins., 627); Attorney-General Cushing in 1854 (6 Opins., 524); and Attorney-General Williams in 1872 (14 Opins., 24). And the same views were expressed by this court in 1866 (Carmack et al. v. The United States, 2 C. Cls. R., 126, 140).
*276 The claimant apparently made some effort to comply with, tbe suggestion that he should furnish the Department with proof of his loss. A paper is transmitted here from the Department, set forth in finding XI, which we can explain only by -■assuming that it was lodged there as the desired proof. The -counsel for the Government moves to strike it from the record. We think it may remain in the record as proof of what the •claimant did in response to the suggestions of the Board of Indian Commissioners; but it cannot be received as proof of any fact stated in the paper, or appearing upon it. With this •explanation, the motion is overruled.
There is nothing on .this paper to show when it was lodged in the Interior Department. It is dated April 9, 1878, and verified in Montana, on the 12th day of the same month. The letter of the Board is dated the 25th of March, and that of the ^Secretary the 2d June. It would appear, therefore, that the paper was submitted in response to the suggestions of the Board, and was not accepted by the Secretary as satisfactory.
The rejected portion of the claim not having been allowed by the Secretary, nor by Congress, is now in suit in this court. 'The claimant contends that having placed himself in a position to carry the 66,000 pounds named in his contract, he is entitled •to be paid as if he had transported them.
Before proceeding to consider this claim, we will dispose of ■■•some preliminary questions raised by the defense.
In the first place it is contended that there is no contract on which to rest a claim for damages, because the approval required by Section XIV was not given till after the breach had -taken place.
No statute requires an Indian transportation supply contract -■to be approved either by the Board or the Secretary. If there vis a regulation requiring such approval, it has not been brought ' to our notice. So far as appears, the necessity of approval ■rests on the provisions of Section XIV. Under the authority of Parish’s Case (8 Wall., 490), we must hold that until the ; approval of the Board and the Secretary the action of the Com- ; missioner was merely initiatory to a contract. But we are also >of opinion that thatapproval when given related back to the date •of the contract, and validated all intervening lawful transactions done under it. To hold otherwise might convert a clause .inserted for the protection of the Government into an instru *277 ment of oppression to tbe citizen. A comparison of dates also» shows that the approval was probably given in order to protect' the claimant in his just rights. The approvals of the Board'; and of the Secretary were given after the claimant had demanded payment for the transportation of the whole contract-amount, and after his claim ha,d been allowed in part and disallowed in jjart. Those officers must therefore have known all the facts when they acted.
It is next contended that the provisions of section 3744 of the Bevised Statutes have not been complied with, and that therefore there.was no valid contract. This section requires-contracts with the Interior Department to be reduced to writing; and signed by the contracting parties at the end thereof, and copies thereof, together with all bids, offers, and proposals, to-be filed in the Department of the Interior.
In the recent case of the South Boston Iron Company {anter 165} we had occasion to consider the force and effect of this-section. Beferring to that-case, it is sufficient to say that the-claimant’s contract complied with all the provisions of the section which are mandatory, and that we are not called upon to-inquire whether it was or was not filed in the Department of the-Interior.
And lastly, the Government objects to a recovery on the ground that section 2107 of the Bevised Statutes forbids the payment of more than 50 per cent, of an amount due for transportation of Indian supplies until the accounts and vouchers shall have been submitted to the executive committee of the Board of Indian Commissioners.
Whether this statute trenches upon the jurisdiction of this court it is not necessary for us now to determine. So far as the present claim can be regarded as a claim for transportation, it has been before the Board and been rejected. So far as it . is a claim for damages for not furnishing.transportation, it does not come within the scope of this section of the Bevised Statutes.
' Overruling these general objections to the claimant’s right of recovery, we now come to the merits of the claim.
The rights acquired under a contract like the present have-been the subject of judicial determination in many cases both in this court and in the Supreme Court, of which it is sufficient to cite Brawley’s Case (11 C. Cls. R., 522; 96 U. S. R., 168).
*278 Adapting the language of the Supreme Court in that ease to the facts in this, we say that—
The quantity designated, 6fi,000 pounds, is to be regarded merely as an estimate of what the officer making the contract at the time supposed might he required. The substantial engagement was to transport what should be determined to be necessary by the officials of the Indian Bureau.
When that determination should be communicated to the contractor, his rights and duties would become fixed.
The only direct evidence of such determination and communication after the execution of the contract is contained in the Indian agent’s letter of January 21, 1878, to the claimant, in which he says:
In reply to your note of January 20, inst., asking for merchandise for transportation to Fort Belknap, under contract with the Commissioner of Indian Affairs, I have to say I have delivered to Mr. Thomas Todd, your agent, eleven thousand two hundred and thirty-five pounds (11,235) of bacon, and do not deliver the flour named in the order of the Commissioner for the reason that the Commissioner states specially not to transport any flour or corn from this agency;. and for thev other articles named in the order of the Commissioner, I cannot deliver them to yon for transportation for the reason that I do nob have them in my possession at-the agency at this date. (Finding YII.)
This was subsequent to the claimant’s proffer of readiness to-perform. If it stood alone, it would be fatal to the claimant’s case. But it is inconsistent with the views which the Board of Commissioners and the Secretary of the Interior had upon the claimant’s equities to suppose that this was the first and only notice which he had. There are other facts in the case which, taken- together, warrant the inference that he had an earlier notice to the effect that he would be required to carry the 66,000 pounds.
In the first place, on the 26th October, simultaneously with the transmission to him of the written, contract for signature; the Indian Commissioner writes to him, “We will ask you to deliver only sixty-six thousand pounds of merchandise now at Fort Peck.” (Finding I.)
In the next place, on the 27th October the Commissioner telegraphed to the Indian agent at Fort Peck to deliver to the claimant for transportation to Fort Belknap a “total weight to aggregate 66,000 pounds.” (Finding Y.)
And, in the last place, the said Indian agent, in his letter to *279 the claimant, of January 21, above cited, refers to tbis telegraphic “order of the Commissioner” as a thing apparently ■then already known to the claimant.
From all which, taken in connection with the action of the Board of Commissioners and the Secretary, we have no doubt “that both the Commissioner for Indian Affairs and the claimant understood the Commissioner’s letter of October 26, although written prior to the execution of the formal contract on the printed blanks, as a direction of the quantity of transportation that would be required under the contract. We also think that the order of the next day to the Indian agent must have been orally or otherwise'communicated to the claimant, and we regard the claimant’s rights and duties as fixed by all these "facts.
It will be observed that the .letter of October 26 speaks of ■66,000 pounds then at Fort Peck; that the telegram of the next ■day enumerates a variety of merchandise supposed to be there as the subject of the transportation contract; and that when ■the claimant comes with his- teams, three months later, the •agent informs him that he cannot deliver about 30,000 pounds ■of these articles, “for the reason that he does not have them fin his possession at the agency.”
But no conclusions adverse to the claimant are to be drawn ¡from the delay in calling.
Neither the Indian agent, nor the Indian Commissioner, nor the Secretary of the Interior, nor the counsel for the Government, nor any person on behalf of the Government cognizant of the facts has alleged that the delay made any change in the ability of the Indian agent to furnish the transportation. On the other hand, it appears by the agent’s letter of the same ■date to the Commissioner of Indian Affairs, that he actually ¡had on hand many of the goods at the time, but was unwilling to part with them, as they would be needed at the Fort Peck Agency; and that of rice, which constituted 6,750 pounds of the proposed 66,000 pounds, he had had none during the whole .■summer. (Finding TIL)
The claimant having been notified in October that he would be required to transport the 66,000 pounds, and having, in accordance with the notification, presented himself in January at Fort Peck with a sufficient force to do that transportation, *280 acquired the right to receive it; and the defendants having-failed to furnish it, the claimant is entitled to recover such damage as he has proved. The rule of damages in such cases has-been often defined by this court. See Cohen’s Case (15 C. Cls. R., 253); Field’s Case (16 C. Cls. R., 434); Moore & Krone’s Case (17 C. Cls. R., 17, and case's cited).
He is entitled in the first place to have his actual losses made-good; that is, to recover the cost which he has been put to in preparing to execute the unexecuted part of his contract above-what he would have been put to had he made preparations-only to execute the part of the contract which he did perform» He has afforded no proof upon this point, although his attention was called to it, and the proof was within his exclusive-control. We h’ave, therefore, found that it does not appear that he was put to any extra expense or suffered any actual loss from that cause. (See Finding XII.)
He is entitled in the next place to recover the profits which he might have gained on the unexecuted part of his contract». On this point the proof, though not as full as might have been desirable, was nevertheless sufficient to enable us to find them-to be twenty-five per cent, on the contract price.
The Government would be entitled to have this reduced by reasonable deductions in consequence of the claimant’s release from care, trouble, risk, and responsibility, were any cause for-it proved. There was no proof on this point, and from the peculiar circumstances of this case we apprehend that there could, be none.
The judgment of the court is that the claimant have and recover of the defendants the sum of $415.24.