WILLIAM CRAMP AND SONS SHIP AND ENGINE BUILDING COMPANY v. UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

No. 92.   Argued January 19, 20, 1910.—Decided February 28, 1910.

Executive officers are not authorized to entertain and settle claims for unliquidated damages.

The Secretary of the Navy had power under the acts of June 10, 1896, c. 361, 29 Stat. 378, authorizing the building of the " Alabama," and of August 3, 1886, c. 849, 24 Stat. 215, to make a change in the terms of the contract requiring a final release to be given so that such release should not include claims arising under the contract which he did not have jurisdiction to entertain, and under a proviso in the release to that effect the contractors are not barred from

prosecuting their claim before the Court of Claims for unliquidated damages.

In this case a provision in a government contract having been treated by both parties as impracticable and therefore waived, the Secretary had power to change the terms of the release required by the contract, and leave the claims of the contractor to be presented to the Court of Claims. *Cramp & Sons* v. *United States*, 206 U. S. 118, distinguished.

Under the Tucker Act the Court of Claims has jurisdiction of a claim for unliquidated damages under a contract for building a war vessel, where a release had been given by the Secretary of the Navy with a proviso that it does not include claims arising under the contract other than those of which the Secretary has jurisdiction. 43 C. Cl. 202, reversed.

THE facts are stated in the opinion.

*Mr. James H. Hayden,* with whom *Mr. Robert C. Hayden* was on the brief, for appellant:

The contract did not obligate the claimant to relinquish the claim in suit, or any other claims that might accrue to it for breach of the contract by the United States. The contract itself was not a release of such claims. The acceptance by the claimant of the last payment did not create a bar to the claimant's right of action for the breach committed by the United States.

Performance by the Government of its covenant to supply armor failing, the builder's agreement to release went with it. "If part of the consideration agreed on be not performed, the whole accord fails." *City of Memphis* v. *Brown,* 20 Wall. 289; *Bank* v. *Leech,* 94 Fed. Rep. 310; 1 Smith's Leading Cases, 5th Am. ed., 445.

The elaborate and tautological expressions contained in the fifth paragraph of the release do not overcome the particular words of limitation, contained in the proviso, which limited the operation of the release to claims which the Secretary of the Navy had jurisdiction to entertain. *Texas &c. R. Co.* v. *Dashiell,* 198 U. S. 521.

The Secretary of the Navy,.and the Cramp Company were correct in the opinion expressed by the former and acquiesced in by the latter that the claim being one for unliquidated damages is of a kind the Department has no authority under the law to entertain. By the saving clause which was finally included in the release they adopted apt words to carry out their purpose to leave the claim in suit open and unsettled. Executive officers of the Government cannot entertain such claims, even when they grow out of contracts made by them. Op. Atty. Gen., ed. 1841, 882. See also *McKee* v. *United States*, 12 C. Cl. 514, 555; *Power* v. *United States*, 18 C. Cl. 263, 275; *McClure* v. *United States*, 19 C. Cl. 18, 28; *Brannen* v. *United States*, 20 C. Cl. 219, 223; *Pneumatic Gun Carriage Co.* v. *United States*, 36 C. Cl. 627, 630.

To give the release or the claimant's acceptance of the last payments the effect claimed for them by the Government and given them by the court below, would be to use them in a way not justified by the terms of the release, or intended by the parties, and would allow the Government to commit a fraud. *Parmlee* v. *Lawrence*, 44 Illinois, 405, 409; *Fire Ins. Assn.* v. *Wickham*, 141 U. S. 564, 576, 582. If the terms of the release were obscure, which they are not, it would have to be interpreted in such a way as to carry out the intent of the parties, to be ascertained from the correspondence which passed between them. *United States* v. *Peck*, 102 U. S. 64; *Merriam* v. *United States*, 107 U. S. 437, 441; *United States* v. *Gibbons*, 109 U. S. 200, 203; *Chicago &c. R. Co.* v. *Denver &c. R. Co.*, 143 U. S. 596, 609; *Nash* v. *Towne*, 5 Wall. 689, 699.

The Secretary had legislative authority to make a contract for the construction of the vessel in question and while this was limited in some particulars it was broad. He was as free to exercise his judgment in the modification of the contract as to the release as he was to make the contract in the beginning. *United States* v. *Barlow*, 184 U. S. 123; *Solomon* v. *United States*, 19 Wall. 17; *Redfield* v. *Windom*, 137 U. S.

636.   This case is not governed by *United States* v. *Wm. Cramp & Sons,* 206 U. S. 118, known as the "Indiana" case.

It was the builder's right and obviously it was for the best interest of the United States, as well as its own, to proceed with the work as best it could, complete it, and sue for damages caused by the breach.   2 Parsons on Contracts, 679; *Clark* v. *United States,* 6 Wall. 543; *United States* v. *Speed,* 8 Wall. 77; *United States* v. *Behan,* 110 U. S. 338, 344; *Figh* v. *United States,* 8 C. Cl. 319; *Myerle* v. *United States,* 33 C. Cl. 1; *Cornwall* v. *Henson,* 2 Ch. (1900) 298, 300; Hudson on· Building Contracts, 1907, 303, 524; *Stubbings Co.* v. *Exposition Co.,* 110 Ill. App. 210; *Nelson* v. *Pickwick Co.,* 30 Ill. App. 333; *Del Genovese* v. *Third Ave. R. R. Co.,* 13 N. Y. App. Div. 412; *S. C.,* 162 N. Y. 614.


*Mr. Assistant, Attorney General John Q. Thompson* and *Mr. Franklin W. Collins* for the United States:

The proviso is not sufficient to confer upon appellant right of recovery.

The failure of the delivery of the armor by the Government within the times and in the order required to carry on the work properly had been fully provided for in the contract in other ways, and had nothing whatever to do either as consideration or otherwise with the release which was required by the contract.   While the contract itself may· not be a release of such claims as those in suit, it nevertheless provided for a release of all claims growing out of the contract.   *Texas &c. R. Co.* v. *Dashiell,* 198 ·U. S. 521.

While the Secretary of the Navy may have power to direct the modification of a contract during the progress of the work he has not after his discretionary powers have ceased and only a plain ministerial duty remains.   The Secretary was clothed with authority to close the contract in a prescribed manner.   He could not make the final payment until a full and final release of all claims was given by the contractor, neither could he .modify or change the form of release

required by the contract, but this does not conflict with the exercise of his discretionary powers in respect to changes and modifications while the work was in progress.

The courts will not assume to make a contract for the parties which they did not choose to make for themselves. *Morgan County* v. *Allen*, 103 U. S. 515; *Hudson Canal Co.* v. *Penna. Coal Co.*, 8 Wall. 276; *Gavinzel* v. *Crump*, 22 Wall. 308; *Robbins* v. *Rollins*, 127 U. S. 633; *Culliford* v. *Gonillo*, 128 U. S. 158; nor is the court at liberty either to disregard words used by the parties or to insert words which the parties have not made use of. *Harrison* v. *Fortlage*, 161 U. S. 63; *Calderon* v. *Atlas Steamship Co.*, 170 U. S. 280.

Contracts are to be construed according' to the intention of the parties as expressed therein, and the courts will disregard the motives, the purposes, or the expectations of a party thereto if these are not in harmony with the plain import of the words used. See 54 Texas, 65; *Clark* v. *Lillie*, 34 Vermont, 405; *Noyes* v. *Nichols*, 28 Vermont, 159; *Conn* v. *Lewis*, 15 Kentucky, 66; *Hildreth* v. *Forrest*, 27 Kentucky, 217; *Shultz* v. *Johnson*, 44 Kentucky, 497; *Salmon Falls Mfg. Co.* v. *Portsmouth Co.*, 46 N. H. 249.

MR. JUSTICE BREWER delivered the opinion of the court.

On September 24, 1896, the appellant entered into a contract with the United States for the building of an ironclad, afterwards known as the "Alabama." The contract was authorized by act of Congress of June 10, 1896, c. 399, 29 Stat. 361, 378. Under this act and that of August 3, 1886, c. 849, 24 Stat. 215, to which it refers, the Secretary of the Navy was charged with the duty of supervising the contract on behalf of the United States. After the completion of the vessel and the payment of the stipulated amount there was something asserted to be due to the building company as unliquidated damages on account of extra work caused by the United States, for which it brought suit in the Court of Claims. That

court found the amount to be $49,792.66.   Relying upon the decision of this court in a case between the same parties for also the building of an ironclad, the "Indiana," *United States v. Wm. Cramp & Sons Co.*, 206.U. S. 118, the Court of Claims rendered judgment for the defendant.   The controversy in this, as in the prior case, turns upon the effect of a release.   In that it was in this form:

"The William Cramp and Sons Ship and Engine Building Company, represented by me, Charles H. Cramp, president of said corporation, does hereby for itself and its successors and assigns, and its legal representative, remise, release and forever discharge the United States of and from all and all. manner · of debts, dues, sum and sums of money, accounts, reckonings, claims, and demands whatsoever, in law or in equity, for or by reason of, or on account of, the construction of said vessel under the contract aforesaid."

Here the same terms of release are used, but they are followed by this proviso:

"Provided, that this release shall not be taken to include claims arising under the said 'contract other than those which the Secretary of the Navy had jurisdiction to entertain."

That release was executed on May 18, 1896; this on April 19, 1901.   We held that the former release settled all disputes between the parties as to claims "under or by·virtue" of the contract.   Evidently the proviso was incorporated with the purpose of accomplishing some change in the effect of the release.   That purpose is disclosed by prior correspondence. On February 13, 1901, the Secretary of the Navy, answering a letter enclosing a claim for extra work of $66,973.23, writes:

"I have to state that while, from a casual consideration of the matter, it might seem proper that the papers should be referred to the bureaus concerned for examination and report, it appears, after a careful consideration of the subject, that the claim, being for unliquidated damages, is of a kind the department has no authority under the law to entertain."

To which the company replied, suggesting this proviso:

"Provided, That nothing herein shall operate as a waiver of this company's right to sue for and recover judgment in the Court of Claims for damages incurred or losses sustained by the company in the prosecution of the contract work which were occasioned by delays or defaults on the part of the United States"—

and adding, in response to the statement of the Secretary, "that the claim being for unliquidated damages, is of a kind the department has no authority under the law to entertain;" that the act of March 3, 1887, c. 359, 24 Stat. 505, known as the "Tucker Act," vests the Court of Claims with jurisdiction to hear and determine such claims. Some further correspondence followed between the parties, which culminated in a letter from the company, enclosing the release as finally executed, and saying:

"This (release) contains a clause which excepts from the operation of the release claims arising under the contract, which you, as Secretary of the Navy, had not jurisdiction to entertain."

It is well understood that executive officers are not authorized to entertain and settle claims for unliquidated damages. Opinion of Attorney General Taney, in which he says:

"If the navy commissioners have refused to take the bread from Mr. Stiles, according to their contract, when he had prepared it of the quality called for by the agreement, it is not in the power of the executive branch of the Government to liquidate and pay the damages he may have sustained. If he has been damnified by the officers of the Government, Congress alone can redress the injury." (Opinions, ed. 1841, p. 882); *McKee* v. *United States*, 12 C. Cls. 504, 555–558.

In *Power* v. *United States*, 18 C. Cls. 263, 275, the court thus discussed the matter:

"The Secretary of the Interior concurred in the opinion that the claimant was equitably entitled to damages, and that he should be invited to furnish proof of the extent of his injury; but did not agree that the damages could be adjusted in

the department.   He proposed to submit the case to Congress.

"In this conclusion that the department had no authority to settle such a claim the Secretary was right.   The laws regulating the payment of money from the Treasury, in the current business of the Government, are reviewed at length by our brother Richardson in his opinion in *McKee's Case*, 12 Ct. Cl. R. 555.   He shows clearly that the laws provide only for the settlement and payment of accounts.   An account is something which may be adjusted and liquidated by an arithmetical computation.   One set of Treasury officers examine and audit the accounts.   Another set is entrusted with the power of reviewing that examination, and with the further power of determining whether the laws authorize the payment of the account when liquidated.   But no law authorizes treasury officials to allow and pass in accounts a number not the result of arithmetical computation upon a subject within the operation of the mutual part of a contract.

"Claims for unliquidated damages require for their settlement the application of the qualities of judgment and discretion.   They are frequently, perhaps generally, sustained by extraneous proof, having no relation to the subjects of the contract, which are common to both parties; as, for instance, proof concerning the number of horses and the number of wagons, and the length of time that would have been required in performing a given amount of transportation.   The results to be reached in such cases can in no just sense be called an account, and are not committed by law to the control and decision of Treasury accounting officers.

"As is well said by Judge Richardson, in the opinion already referred to (12 C. Cls. 556), this construction 'would exclude claims for unliquidated damages, founded on neglect or breach of obligations or otherwise, and so, by the well-defined and accepted meaning of the word 'account' and the sense in which the same and the words 'accounting' and 'accounting officers' appear to be used in the numerous sections of the

numerous acts of Congress wherein they occur, it would seem that the accounting officers have no jurisdiction of such claims except in special and exceptional cases, in which it has been expressly conferred upon them by special or private acts. And such has been the opinion of five Attorneys General—all who have officially advised the executive officers on the subject. Attorney General Taney, in 1832, whose opinion is referred to by his successors in office; Attorney General Nelson in 1844 (4 Opins. 327); Attorney General Clifford in 1847 (4 Opins. 627); Attorney General Cushing in 1854 (6 Opins. 524); and Attorney General Williams in 1872 (14 Opins. 24). And the same views were expressed by this court in 1866 (*Carmack et al.* v. *United States*, 2 Ct. Cl. R. 126, 140.)' *McClure* v. *United States*; 19 *Id.* 28–29; *Brannen* v. *United States*, 20 *Id.* 219, 223–224; 4 Opin. Attorneys General, 327–328; *Id.* 626, 630."

But it is contended that the contract, independently of the release, provided for a settlement of all matters growing out of the delay in the completion of the vessel, although this is in apparent conflict with the opening statement of the Government in its brief, for there it says: "The issue here is whether the proviso in that release saves the contractor from the final and complete surrender of his right to recover on the claims set out in the petition." But this, although it indicates the views of the Government of the question at issue, does not preclude it from presenting other matters, and it insists that by the third clause in the contract, the vessel, when completed without the armor, was to be subjected to a trial provided for in a subsequent clause of the contract, and a board of naval officers appointed by the Secretary of the Navy was to determine the deduction from the total price of the vessel under the contract if completed with armor. It further contends that by the ninth clause of the contract the matter of possible delay was recognized by the Secretary of the Navy, and his determination as to the effect thereof was to be conclusive. Now it may be said that both the contractor and the Government had the right to insist upon the

delivery of the vessel when it was completed without the armor, and that the deduction in price should then be settled by the board of officers appointed by the Secretary. It may also be conceded that the Government could have insisted upon a release in the form specified in the contract, but neither the company nor the Government insisted on the delivery of the vessel at the time it was launched and before it was armored. The Government left the vessel with the company, waiting for armor to be put on—armor which it had not then been able to secure and tender to the company, and when the question arose as to a settlement it did not insist upon a release as specified in the contract. This contract was plainly treated by both parties as impracticable, and therefore waived. Evidently from his letter of February 13, 1901, the Secretary was of the opinion that, equitably, there was something due to the company, and yet, realizing that that question was not one for his determination, in order that full justice might be done, he consented to a change in the terms of the release, and this he had power to do. *Salomon* v. *United States*, 19 Wall. 17; *United States ex rel. Redfield* v. *Windom*, 137 U. S. 636; *United States* v. *Barlow*, 184 U. S. 123, 135.

By the "Tucker Act" jurisdiction is conferred upon the Court of Claims "to hear and determine  .  .  .   all claims  .  .  . for damages, liquidated or unliquidated, in cases not sounding in tort."

It results therefrom that a release executed in accordance with the terms of the contract would have extinguished all claims of the company against the United States growing out of the contract (206 U. S. 118); that the Secretary of the Navy had no power to pass upon and adjudicate claims for unliquidated damages; that he had power to accept a release such as was given, and that the proviso left for determination in the courts claims for unliquidated damages growing out of the contract; that under the Tucker Act the Court of Claims had jurisdiction to inquire into and determine claims for unliquidated damages, and that upon the facts found there

is due to the company from the United States for extra work caused by the United States the sum of $49,792.66.

*The judgment of the Court of Claims is reversed and the case remanded to that court, with instructions to enter judgment for that amount.*