Peelle, Ch. J.,
delivered the opinion of the court:
The question now arises on the claimant’s motion for a new trial and to amend findings on the ground of error of law as well as error of fact. We will therefore review the case.
The contract in this case for the construction of the battleship Massachusetts is identical with that between the same parties for the construction of the battleship Indiana, and the breaches complained of are in effect the same — that is, by reason of the delay of the Government in furnishing the armor plate in the order which, by the terms of the contract it agreed to do, the completion of the vessel was delayed for two years sis months and nine days, which delay the Secretary of the Navy under the authority of the contract decided was due to the failure of the United States to furnish the materials in the order as aforesaid, and for that reason the time within which to complete the vessel, and thereby release the claimant from the penalties provided for in the ninth clause of the contract was extended by the Secretary a corresponding length of time, to wit, to May 29, 1896, on which date the vessel so contracted for was completed and delivered.
The defense is that the extension of time so granted operated to release the Government from any damages which might have accrued by reason thereof, and, further, that the execution of the modifications of the contract and the releases thereunder, as well as the final release as set forth in Findings V and VI, operated to release the United States from all claims of any kind or description under or by virtue of the contract, including claims for unliquidated damages of the character described in the petition.
The contract and the releases in the case of the Indiana were considered by the Supreme Court (206 U. S., 118, 127), and the judgment of this court was reversed (41 C. Cls., 164). There the contention was as to the effect of the final *532 release, in relation to which paragraph 6 of the nineteenth clause of the contract provided:
“ 6. When all the conditions, covenants, and provisions of this contract shall have been performed and fulfilled by and on the part of the party of the first part, said party of the first part shall be entitled, within ten days after the filing and acceptance of its claim, to receive the said ‘special reserve,’ or the surplus, if any, of the said ‘ reserve fund,’ or so much of either as it may be entitled to, on the execution of a final release to the United States in such form as shall be approved by the Secretary of the Navy, of all claims of any kind or description under or by virtue of this contract.”
In construing that provision of the contract the Supreme Court, among other things, said:
“ Manifestly included within this was every claim arising not merely from a change in the specifications, but also growing out of delay caused by the Government. The language is not alone ‘ claims under,’ but ‘ claims by virtue ’ of the contract — ‘claims of any kind or description.’ All the claims for which allowances were made in the judgment of the Court of Claims come within one or the other of these clauses. It may be that, strictly speaking, they were not claims under the contract, but they were clearly claims by virtue of the contract. Without it no such claims could have arisen. Now, it having been provided in advance that the contract should be closed by the execution of a release of this scope, it can not be that the company, when it signed the release, understood that some other or lesser release was contemplated. It must have understood that it was the release required by the contract — a release intended to be of all claims of any kind or description under or by virtue of the contract, and that the form of words which the Secretary had approved was used to express that purpose.”
And further, in commenting on the release, the court said:
“ Indeed the general language of the release itself and the number of words of description in it show that it was the intent of the Secretary of the Navy to have a final closing of all matters arising under or by virtue of the contract. Stipulations of this kind are not to be shorn of their efficiency by any narrow, technical, and close construction. The general language ‘ all and all manner of debts,’ etc., indicates a purpose to make an ending of every matter arising under or by virtue of the contract. If parties intend to leave some things open and unsettled their intent so to do should be made manifest.”
*533 The holding is that the release contemplated by the contract was to embrace, as the court says, “ all the claims for which allowances were made in the judgment of the Court of Claims,” including claims of an unliquidated character, though the Secretary of the Navy was without authority to settle such claims.
Following that decision this court, under a like contract between the same parties for the construction of the ironclad Alabama (43 C. Cls., 202, 218), held that when the conditions, covenants, etc., had been performed and final payment made the claimant was obligated to sign the release provided for by the terms of the contract releasing the Government from “ all claims of any kind or description under or by virtue of said contract; ” that the rights of the parties were determined by the contract itself and not by the language of the release. On appeal, however, the case was reversed (216 U. S., 494) on the ground that the proviso to the release in that case excluded claims arising under said contract, which the Secretary of the Navy had no authority to entertain, and in respect of which the court said:
“It results therefrom that a release executed in accordance with the terms of the contract would have extinguished all claims of the company against the United States growing out of the contract (206 U. S., 118); that the Secretary of the Navy had no power to pass upon and adjudicate claims for unliquidated damages; that he had power to accept a release such as was given, and that the proviso left for determination in the courts claims for unliquidated damages growing out of the contract.”
From this it follows that in the present case the claimant must be denied a recovery for the unliquidated damages claimed because the final release it signed was in accordance with the terms of the contract, no reservation being made therein.
The claimant, however, contends that the facts in this case differ from those in the Indiana both in respect of the modifications of the contract and releases thereunder and final release in this, that at the time of the execution of the modifications of said contract and releases thereunder the claimant was, by reason of its financial embarrassment *534 caused by the delays of the Government as aforesaid, under duress. But as under the ruling of the Supreme Court in the case of the Indiana cited all claims for damages arising under or in pursuance of the contract were released to the Government by the terms of the final release, we need not consider the effect of the prior releases further than to say that testimony of the officers of the Government and of the claimant company having to do with the contract was taken and offered by the claimant company, after the decision in the case of the Indiana, to prove (1) that the execution of the modifications of said contract and the releases set forth in Finding V were without consideration because the company was at the time of the execution thereof, by reason of its financial embarrassment caused by the delays of the Government, under duress; (2) that at the time of the execution of the original contract it was not within the intent of the parties that the final release therein referred to should embrace claims for damages over which the Secretary of the Navy had no jurisdiction to settle, and the final release is asked to be re-formed accordingly.
The claimant’s contention is that the language of the sixth paragraph of the nineteenth clause of the contract was not intended to embrace unliquidated claims, and that, therefore, the language of the final release should be so re-formed as to exclude them. This is a question of law, and was the view of this court in the case of the Indiana; and if the same should be held the correct view now the claimant company would probably be entitled to relief without the re-formation of either the contract or the final release.
But, as the final release, as held in the case of the Indiana, is in conformity with the contract, its re-formation would not avail the claimant without also reforming the contract; and as the evidence disclosed by the findings fails to show that there was any mutual mistake in the contract (nor is any averred in the petition), there is no ground for re-formation. The effect of the claimant’s contention is that under the contract the Secretary of the Navy might, as in the case of the Alabama, have prescribed two forms of receipt; and having prescribed but one, as in the case of the Indiana — though the claimant made no demand otherwise — the *535 one he did prescribe in this case was not within the intent of the parties.
The question then is, do the matters on which the claimant company relies bring the case within the authorities which govern the reformation of contracts? That the claimant has not established by its propositions that there was a mistake in fact in the execution of either the contract or the intermediate contracts or the final release will be seen by a review of the authorities.
As held in the case of Citizens National Bank v. Judy (146 Ind., 322), “In every case it must clearly and satisfactorily appear that the precise terms of the contract had been orally agreed upon, and that the writing afterwards signed fails to be, as it was intended, an execution of such previous agreement, but, on the contrary, expresses a different contract.” That holding is supported by the highest courts in many, if not most, of the States, as will be seen by examining the American & English Encyclopedia of Law, volume 15, page 651, note 5.
In the case of Hearne v. Marine Insurance Co. (20 Wall., 488, 490) the court went further and said: “ The party alleging the mistake must show exactly in what it consists and the correction that should be made. The evidence must be such as to leave no reasonable doubt upon the mind of the court upon either of these points. The mistake must be mutual and common to both parties to the instrument. It must appear that both have done what neither intended. A mistake on one side may be ground for rescinding, but not for re-forming the contract: Where the minds of the parties have not met there is no contract, and hence none to be rectified.”
Later, in the case of United States v. Budd (144 U. S., 154, 161), the court, quoting from the case of Maxwell Land Grant (121 U. S., 325, 381), said: “We take the general doctrine to be, that when in a court of equity it is proposed to set aside, to annul, or to correct a written instrument for fraud or mistake in the execution of the instrument itself, the testimony on which this is done must be clear, unequivocal, and convincing, and that it can not be done upon a bare preponderance of evidence which leaves the issue in doubt.” *536 The case of Hearne v. Marine Insurance Company, supra, was followed by this court in the South Boston Iron Works Case (34 C. Cls., 174, 201).
In the Milliken Imprinting Company Case (40 C. Cls., 81), where a circular had been issued by the Commissioner of Internal Revenue inviting bids for imprinting stamps, and under the belief that the terms recited in the circular had been set out in the contract the claimant signed the same, but afterwards discovered that certain material portions thereof had been omitted, this court held that there was such mutual mistake as to justify a re-formation; but on appeal the case was reversed (202 U. S., 168) on the ground that there was no mutual mistake justifying the re-formation of the contract.
Therefore the mistake must not only be shown beyond a reasonable doubt, but it must be mutual, “unequivocal and convincing,” and common to both parties; and in this respect .the court, in the case of Diman v. Providence, W. & B. R. Co. (5 R. L, 130), held: “If,the court were to re-form the writing to make it accord with the intent of one party only to the agreement, who averred and proved that he signed it, as it was written, by mistake, when it exactly expressed the agreement as understood by the other party, the writing, when so altered, would be just as far from expressing the agreement of the parties as it was before, and the court would have been engaged in the singular office, for a court of equity, of doing right to one party at the expense of a precisely equal wrong to the other.”
Hence it is uniformly held that a unilateral mistake is no ground for re-formation in the absence of fraud or other inequitable conduct by the other contracting party; and even in such case, if fraud be shown, relief will be granted on that ground rather than for a mistake; nor can the contract be reformed on the ground of mistake arising from ignorance of the law (Hunt v. Rhodes et al., admrs., 1 Pet., 1, 14), unless the party seeking such re-formation was misled as to his legal rights by the statements of the other party — not contended in the present case — (Schell v. Atlantic F. & M. Ins. Co., 98 U. S., 85), but a mere mistake of law without other circumstances constitutes no ground for the re-formation of written *537 contracts {Snell v. Atlantic F. & M. Ins. Co., supra), especially where such mistake is unconnected with any mistake of fact and there is no fraud or undue advantage entering into the agreement (Nabours v. Cocke, 24 Miss., 44, 51, and numerous other cases cited in support of the same proposition in the Am. & Eng. Ency. of Law, vol. 15, p. 635, note 1).
In the case of Hunt v. Rhodes et al., cited above, the Supreme Court, in speaking of the re-formation of a contract on the ground of mistake arising from ignorance of the law, said: “ The question, then, is, Ought the court to grant the relief which is asked for upon the ground of mistake arising from any ignorance of law ? We hold the general rule to be that a mistake of this character is not a ground for re-forming a deed founded on such mistake; and whatever exceptions there may be to this rule, they are not only few in number, but they will be found to have something peculiar in their character.”
This case has been followed by the Supreme Court in many cases since, and the last case is that of Utermehle v. Norment (197 U. S., 40, 56), where, in speaking on this subject, the court said: “ It has been held from the earliest days, in both the Federal and State courts, that a mistake of law, pure and simple, without the addition of any circumstances of fraud or misrepresentation, constitutes no basis for relief at law or in equity, and forms no excuse in favor of the party asserting that he made such mistake.”
It may therefore be laid down as a well-established rule that where there is no mixed question of law and fact and no fraud, undue influence, or deceit a court of equity will not grant relief. In the case of Lyon v. Richmond (2 John (N. Y.) Ch., 51, 60) Chancellor Kent said: “ The courts do not undertake to relieve parties from their acts and deeds fairly done on a full knowledge of the facts, though under a mistake of the law. Every man is to be charged at his peril with a knowledge of the law. There is no other principle which is safe and practicable in the common intercourse of mankind.”
It is manifest from the findings as well as from the evidence that there was no duress, nor was there mutual mistake between the parties either as to the facts or the law, as *538 the language of the contract and releases clearly express what was intended by the officers and agents of the United States; or, as was said by the court in the case of the Indiana,, the “ language of the release itself and the number of words of description in it show that it was the intent of the Secretary of the Navy to have a final closing of all matters arising under or by virtue of the contract.”
But as the re-formation of .a contract is an equitable proceeding, and the Supreme Court reserves to itself the right, if deemed competent and material, to examine and review the evidence independent of the findings, we deem it unnecessary to review the evidence — in the main matter of opinion — or give the substance thereof. The sole ground for a reformation of the final release was the misconception of the claimant company as to its legal rights under the contract, i. e., that the claimant company was damaged by reason of the delay of the Government in furnishing the armor plate in the order agreed upon; that the same was not satisfied by the corresponding extension of time; and that therefore the language of the final release was not intended to embrace claims arising from such delays.
Such was the view of this court in the case of the Indiana, but on appeal the Supreme Court held that the final release was in conformity with the contract and reiterated the same in the case of the Alabama. It follows that to reform said release excluding claims of the character here involved it must be upon the theory that such claims xvere not embraced within the language of the sixth paragraph of the nineteenth clause of the contract. In víoav of the adjudications of the. Supreme Court to the contrary we do not feel at liberty to so hold; nor do we feel at liberty to insert in the final release by construction language reserxdng to the claimant the right to be heard in court when it might, by protest and demand, haxre had the same inserted with the consent of the Secretary. So in the final analysis the case resolves itself into this: Was the language of the final release authorized by the sixth paragraph, clause 19, of the contract? This is a question of construction and not of re-formation, and is answered by the Supreme Court in the case of the Indiana; and as the Secretary, who had the power so to do, *539 prescribed and accepted tbe final release, as well as the other releases in the case, we must hold that the terms of the contract as expressed in the release hare been complied with.
The claimant’s motion for a new trial is overruled. The motion to amend the findings is allowed in part and overruled in part. The former findings of fact and opinion are withdrawn and new findings and opinion are this day filed, the former judgment dismissing the petition to stand.