LittletoN, Judge,
dissenting: Upon the facts of record I am of opinion that we are without authority to overturn the findings and decision of the contracting officer, Colonel R. Park, of July 20, 1938, set forth in finding 14. This decision is referred to in the findings as the contracting officer’s report to the Chief of Engineers, but I do not think that it was merely a report or recommendation. The contracting officer was authorized and required by the contract to decide the questions submitted to him in Claim 1, and he made findings and a decision thereon in the exercise of his independent judgment, as he was required to do by art. 15 of the contract, and plaintiff accepts the decision and bases its total claim for judgment for $37,812.90 upon his findings and decision. We cannot reject the decision of the contracting officer unless it was so grossly erroneous as to imply bad faith. Claim 1 was not a claim for unliquidated damages for breach of contract beyond the jurisdiction of the contracting officer to decide under the rule stated in Wm. Cramp and Sons Ship and Engine Building Co., v. United States, 216 U. S. 494, 500. In my opinion a finding of gross error may not be made. Colonel Park acted with full knowledge of all the facts and with entire good faith. The question with which we are met at the threshold of the case is, therefore, Was this a decision on a dispute concerning questions of fact? If it was such a decision, it is final and we should enforce it by entering judgment upon it as a court would upon a verdict of a jury.
*93 The contracting officer gave full consideration to all the facts relating to plaintiff’s claim and held that in his opinion plaintiff had been misled by the Government. After setting forth what he considered to be the essential facts, he concluded with the decision that “In view of the foregoing, the District Engineer is of the opinion that this claim of the contractor is meritorious and recommends that the sum of $37,812.90, computed as above outlined, be paid to him.” This was an ultimate finding in favor of the contractor that it had been reasonably misled on the dispute made in Claim 1 concerning questions of fact which had arisen and which were pi’esented to him for decision. The questions presented and decided were, therefore, “disputes concerning questions of fact” under art. 15, and the decision, being in favor of the contractor, was final and conclusive without appeal and could not be reviewed or reversed by the Chief of Engineers or the head of the department, except on the ground of fraud.
The questions which gave rise to the dispute, and which the contracting officer decided, were whether the contractor had been misled, and whether its claim that it had been so misled was reasonable and logical under the facts as presented by the contractor, or as obtained and considered by the contracting officer. These were questions of fact which in the ordinary case in a suit on that ground under the contract would be submitted to and decided by the jury. The contracting officer resolved these questions in favor of the contractor and concluded as an ultimate finding that the contractor had been misled; that it was reasonable for him to have been misled, and that plaintiff was therefore entitled to the additional compensation of $37,812.90, which was the actual excess cost of $26.15 an acre in addition to the bid price of $51.'85 an acre for clearing 1,446 acres which the contractor claimed and the contracting officer determined to be the area with respect to which the contractor had been misled by the information conveyed in the documents accompanying and forming a part of the contract. The amount of compensation to which the contractor was reasonably entitled on the finding that it had been reasonably misled was also a question of fact. In numerous cases decisions on *94 such questions in favor of the Government have been enforced by the courts against the contractor, except where a finding of implied bad faith was justified.
The facts of record which appear to have been before the contracting officer, and which he considered and acted upon in deciding plaintiff’s claim, show that Claim 1 made by plaintiff, which was the only claim allowed by the contracting officer for additional compensation, measured by the difference between $78 an acre and its bid price of $51.85 an acre for 1,446 acres, was based upon the claim that plaintiff had been justifiably misled at the time it made its bid as to this number of acres, and not that this area of 1,446 acres which plaintiff had also been required to clear along with other areas, all of which totaled 3,733.23 acres, was outside the requirements of the contract as properly interpreted and construed. This latter question, if it was ever raised at all, had already been disposed of by the construction engineer and by Mr. Gatlin, assistant to the contracting officer, and accepted by plaintiff. The record shows that the contracting officer also decided this question on November 17,1937, but since plaintiff never received the letter dated November 17, and it was not sent to the Chief of Engineers, Colonel Park apparently concluded not to mail the letter and to keep under consideration for further action plaintiff’s Claim 1 that it had been misled. The contracting-officer and plaintiff throughout, and until the decision of July 20, 1938, considered and treated Claim 1 to be based on the contention made by plaintiff that it had been misled.
The contracting officer was thoroughly familiar with the provisions of the specifications and he obviously did not consider Claim 1 of the plaintiff to be a claim for payment for “work required of him outside the requirements of the contract” within the meaning and purpose of para. 1-11 of the specifications, and in this he was entirely correct. A claim by the contractor that he had been reasonably misled and was entitled to a higher rate of pay than the price bid for the areas as to which he had been misled clearly was not a claim for work which the contractor considered to be outside the requirements of the contract. Plaintiff was asking for an increase in the bid price to cover actual cost, and *95 not for a new price plus profit for extra work outside the contract. The facts show that plaintiff before and at the time it made its claim, first, on September 27 and, in more detail, on November 1, 1937, had been advised that these disputed areas outside the areas covered by the limits of the shaded portion on the contract drawing, or map, were within the requirements of the contract under the provisions of para. 1-02 of the specifications quoted in finding 3. Plaintiff accepted this ruling without filing any protest or claim specifically on that ground, but that did not dispose of the matter of plaintiff’s claim that as to these areas it had been misled. These rulings as to what was required of plaintiff by the contract specifications meant that plaintiff was to clear all areas between 244 and 260 feet whether within or outside the shaded portion of the map at the contract price of $51.85 an acre, unless plaintiff had been misled.
The protest which plaintiff made early in September 1937 to the contracting officer personally, as a result of which plaintiff was told to file its claim and that it would be considered, and as a result of which protest plaintiff soon thereafter filed its claim, was, as above stated, not that the areas as to which it was complaining were outside the work required by the contract as it had been interpreted but that it had been misled by the information disclosed by the map and that, as a result, the bid price of $51.85 an acre was too low to cover cost, because these areas were more difficult and more expensive to clear. The contracting officer therefore did not have before him when he made his findings and decision on July 20, 1938, on plaintiff’s claim any question of law as to the proper interpretation or construction of the scope and requirements of the contract specifications. The preliminary statement of the findings and opinion on plaintiff’s Claim 1 shows this to be true. In para. 2 of the preliminary statement of his opinion the contracting officer accepted this view of the contract which he had previously expressed as a basis for his findings and opinion on the questions of fact presented in Claim 1. But assuming that the question of the construction of the contract was one of the questions necessarily before the contracting officer and that in his decision of July 20 he also decided that question of law, still *96 his decision under the contract on the other questions of fact, including the fact as to the reasonable additional amount due, would be final and conclusive. If that question of law was necessarily before the contracting officer in the claim decided, he decided it correctly and no one can complain. Plaintiff does not here question that phase of the decision and the defendant cannot rely upon that part of it as a means of rejecting the findings and decision on the other questions of fact.
About two weeks after plaintiff started work on November 25,1936, its president, who had prepared the bid, went to the site of the work and found that the Government engineer or inspector in marking or blazing the limits of the areas to be cleared to elevation 260 was including within the limits of the clearing which would be required under the contract areas beyond the limits as shown on the contract drawing, or map. Plaintiff had not reached those areas at that time, and apparently did not reach them until long afterwards. Plaintiff’s president in making the bid of $51.85 an acre, after the inspection made by him, relied upon the contract map as indicating the extent of the areas to be cleared and as including in the shaded portion all tributary streams, etc., of the eleven sections involved, as set forth in para. 1-02 of the specifications, which were below elevation 260 feet, and the basis of his claim subsequently made was that since the information furnished on this map did not include all those areas which would be included under the language of para. 1-02 plaintiff had been misled. After investigation and consideration the contracting officer agreed with plaintiff that it had been misled by the map.
The proof shows that after bids had been opened and it was found that plaintiff’s bid was very low, and much below the Government’s estimate for the work which it intended to require under the specifications, and before plaintiff’s bid had been accepted, plaintiff’s president went to see Colonel Park, the contracting officer, and Colonel Park asked plaintiff’s president if he had made a mistake in the bid. This conference was held for the purpose of permitting plaintiff to correct its bid before acceptance, if it should find that it had made a mistake. This, of course, was the fair thing for *97 the Government to do. At that conference, as the evidence shows, plaintiff’s president again read and considered both the specifications and the contract drawing or map in connection with the specifications, and again came to the same conclusion that he had when he made the bid after considering the documents and visiting the site of the work, namely, that the specifications and the map were consistent and that the extent or limits of the areas to be cleared, including tributary streams, etc., of the streams shown on the map and mentioned in para. 1-02 of the specifications, between elevation 244 ft. and 260 ft., were as indicated on the shaded portion of the map. By that interpretation of the map, if it was a reasonable one, as the contracting officer subsequently held, plaintiff was again misled. Plaintiff’s president was an engineer of experience. Nothing was said and no discussion was had at that time between plaintiff and Colonel Park as to the proper interpretation of the information disclosed by the specifications and the map, or whether they were consistent, and obviously such a discussion would not have been proper at that time and obviously, also, neither considered it necessary. After again examining and considering the specifications and the map plaintiff’s president told the contracting officer that he did not consider that he had made a mistake in the bid of $51.85' an acre. Plaintiff’s bid was thereafter in due course accepted and the contract was subsequently executed. Plaintiff subsequently found that the information which it had believed was conveyed by the map was not consistent with the language of para. 1-02 of the specifications. The specifications of course governed and this, of necessity, gave rise to the question whether plaintiff had been misled and, if so, whether it had been reasonably misled. Why was a drawing or map which contained positive statements, and which was known by the Government to be erroneous and incorrect as to the area which it intended should be cleared, made a part of the contract without any warning or statement of its incorrectness, or warning that it should not be relied upon in any way? Why did para. 1-03 of the specifications, entitled “maps,” contain the positive statement that “The extent of' the area to be cleared is shown on map marked * * *, *98 which forms a part of these specifications * * if it was intended by the Government that no reliance should be placed upon such statement and the map referred to? Colonel Park considered all these matters and decided that plaintiff had been reasonably misled, and that is the same question of fact upon which this court must act and upon which the decision must turn.
After defendant’s engineer told plaintiff that it would be required to clear all areas below elevation 260, plaintiff observed that two areas of 200 and 400 acres, which were outside the limits of the shaded areas shown on the contract drawing, had been included in the area to be cleared and immediately went to see the contracting officer, Colonel Park, early in September, 1937, and laid before him a protest that it had been misled with reference to the areas which it had been instructed would have to be cleared under the contract xvhich lay outside or beyond the shaded areas shown on the contract map upon which plaintiff had relied in making its bid of $51.85 an acre. In that conference plaintiff pointed out to Colonel Park the areas indicated on the map and explained to him the manner in which it had made up its bid, the reasons which entered into the amount therefor, and also as to why the clearing of such areas would be more expensive than the others-.- After discussion Colonel Park told plaintiff to make its claim and that he would consider it. Plaintiff first made its claim on which this suit is based on September 27,1937 (finding 13). After some correspondence plaintiff sent to the contracting officer its combined claims on November 1, 1937, as set forth in finding 14. This claim was in more detail than the claim first filed, but the adjustment in pi’ice asked for in Claim 1, to wit, an increase of $26.15 an acre, was the same. The claim of November 1, 1937, itemizing the number of acres in the various sections, as to which plaintiff claimed it had been misled, totaled 1,446 acres. The record shows that plaintiff had several conferences with the contracting officer. The evidence shows, as found in finding 9, that the actual cost of clearing this acreage was $78 an acre and that this was reasonable for the work. It was more expensive to clear the 1,446 acres in question than it was the other areas *99 required by the contract for the reason that the timber was thicker and heavier, the ground was rough and inaccessible, and it was difficult to get machinery into the areas with which to do the work. The number of acres as to which plaintiff claimed it had been misled was ascertainable after defendant’s engineer had marked the limits and before these areas were cleared.
The fact that the contracting officer sent his findings and decision on the questions of fact presented by plaintiff’s Claim 1, made the basis of this suit, to the Chief of Engineers direct through the Division Engineer and did not also send it to plaintiff is, in the circumstances, immaterial. Plaintiff was entitled to a decision by the contracting officer under the contract; that decision was made, and the fact that plaintiff did not get it until later cannot be used against it. The findings and decision of the contracting officer were made in the fulfillment of the duty imposed upon and required of him under the contract and may not, therefore, be treated merely as an interdepartmental communication as that term has heretofore been referred to in certain decisions of this court. Moreover, section 695, title 28, U. S. C., provides that “In any court of the United States * ■ * * any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of said act, transaction, occurrence, or event, if it shall appear that it was made in the regular course of any business, and that it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter. All other circumstances of the making of such writing or record, * * * may be shown to affect its weight, but they shall not affect its admissibility.”
The contracting officer’s decision is not weakened by the fact that it was not sent to plaintiff at the time it was transmitted to the Chief of Engineers through the Division Engineer. This was the regular practice under the regulations, where final payment had been made. The sixteenth and final payment on the contract, independent of plaintiff’s claim, had been made on a voucher dated January 18, 1938, *100 and paid January 22,1938. This final voucher was signed by plaintiff under written protest. Whether he sent his decision to the Chief of Engineers for this or other reasons does not matter, for administrative procedure cannot override or control the provisions of the contract as to the effect or finality of a decision made by a contracting officer in favor of the contractor upon a claim whether such decision is made before or after final payment. Plaintiff finally got the findings and decision of the contracting officer, which document is properly in evidence, and relies upon the decision in this case as the basis of its claim for judgment in the amount of $37,812.90 found to be due by the contracting officer. ,
The decision of the contracting officer in favor of plaintiff on the facts was made final and conclusive without review by any one, and neither the Chief of Engineers nor the Comptroller General had authority to review or reverse it. The letter of the Chief Engineer transmitting plaintiff’s claim and the contracting officer’s findings and decision to the Comptroller General is therefore immaterial and of no legal effect. Art. 15 of the contract providing that “All disputes concerning questions of fact arising under this contract shall be decided by the contracting officer” made his decision final and conclusive on the parties to the contract, subject only to appeal by the contractor. The Government agreed by this provision to be bound by the decision of the contracting officer, if in favor of the contractor, and was given no right of appeal to the head of the department; therefore, it was the duty of thé Chief of Engineers and the Comptroller General to pay the amount found to be due by the contracting officer unless they desired to submit the matter to the head of the department on a charge of ei’ror so gross as to imply bad faith.
It seems clear that neither plaintiff nor the contracting officer considered the claim as being one for work outside the requirements of the contract within the meaning of para. 1-11 of the specifications. In this I think they were clearly right. But if it be assumed that it was such a claim, it was necessarily implied in para. 1-11 that the contracting officer could under proper circumstances extend the time for filing a claim or waive defective compliance with this provision, *101 and it seems clear enough that his conduct and action in this regard were in fact an extension of time, or waiver. The circumstances justified such action on his part. Moreover, it appears from the evidence that plaintiff with reasonable promptness filed its claim after its conference with and protest to the contracting officer, as hereinbefore set forth. The claim was filed long before the work was completed, two months and nine days to be exact, and obviously before much, if any, clearing in the areas as to which plaintiff claimed it had been misled was performed. Plaintiff used as many as one thousand men on this job after the work got well under way until it was completed. The contracting officer gave plaintiff an extension of time of forty-nine days because of his decision that it had been misled, and that action was not questioned by the Government, although plaintiff was charged and paid liquidated damages for seventy-three days’ delay in completion due to bad weather Avbich was determined by the contractor not to have been unusual.
Colonel Park acted honestly and in good faith upon and with full knowledge of all the facts which we have before us. He was on the ground and was in a better position than anyone else to judge what the true facts Avere and what effect they reasonably had on plaintiff when it made its bid, and he evidently had had a great deal to do with the preparation of the contract and related documents. Since the map was not correct, which the Government knew and which is admitted, it would have been an easy matter for the Government to have so stated, and it was its duty in fairness to bidders to do this or to give them some sort of warning not to rely on the map, or para. 1-03 of the specifications. Instead of doing this the Government made the positive statement in the specifications that the extent of the area to be cleared Avas shown on the map. The Government ought to bear the consequences of these misleading representations and should be required to pay the actual excess cost of $31,812.90 occasioned thereby. I do not think Colonel Park’s decision was erroneous. However, I do not go into that matter for the reason that if it be assumed that the decision was erroneous it is clear to me that a claim that it was so grossly erroneous as to imply bad faith could not be *102 sustained. The Government does not 'claim implied bad faith.
Plaintiff claims the amount of $37,812.90 allowed by the contracting officer, which is admitted to have been the actual reasonable excess cost over the bid price of $51.85 for clearing the 1,446 acres involved, which amount plaintiff would have been paid and would have received from the Government had officials, who had no authority to decide, not reversed the decision of the contracting officer. Since the Government agreed to be bound by Colonel Park’s findings and decision on the questions of fact, plaintiff should be given judgment for $37,812.90.
Jones, Judge, took no part in the decision of this case.