# United States Court of Appeals for the Federal Circuit

2008-5078

BANK OF GUAM,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Kurt W. Melchior, Nossaman LLP, of San Francisco, California, argued for plaintiff-appellant. With him on the brief was Robert M. Adler, Nossaman LLP/O'Connor & Hannan, of Washington, DC. Of counsel on the brief were Jerome Sapiro, Jr. and David A. Sauers, The Sapiro Law Firm, of San Francisco, California.

Brian A. Mizoguchi, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief was Jeanne E. Davidson, Director. Of counsel on the brief was Cleve Lisecki, Attorney-Advisor, Office of the Associate Chief Counsel (International), Internal Revenue Service, of Washington, DC.

Appealed from: United States Court of Federal Claims

Judge Christine O.C. Miller

# United States Court of Appeals for the Federal Circuit

2008-5078

BANK OF GUAM,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in No. 07-CV-032, Judge Christine O.C. Miller.

_____

DECIDED:  August 12, 2009

_____

Before LOURIE, SCHALL, and GAJARSA, <u>Circuit Judges</u>.

SCHALL, <u>Circuit Judge</u>.

Bank of Guam (the "Bank") appeals from the final judgment of the United States Court of Federal Claims that dismissed its suit for breach of contract against the United States.  <u>Bank of Guam v. United States</u>, 80 Fed. Cl. 739 (2008) ("<u>Dismissal Order</u>").  The Bank brought suit against the United States alleging that Guam's collection of the Guam Territorial Income Tax ("GTIT") on interest income received by the Bank from certain United States government obligations ("USGOs" or "bonds") breached a promise by the United States that income from the USGOs held by the Bank would not be subject to taxation by the GTIT.  The Court of Federal Claims entered judgment

dismissing the Bank's complaint after granting the government's motions to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"). Id. at 753–54. The court granted the government's motions because it concluded that (1) certain of the Bank's claims were barred by the statute of limitations set forth at 28 U.S.C § 2501; and (2) as far as the remaining claims were concerned, collection of the GTIT did not constitute the breach of either an express or implied-in-fact contract between the United States and the Bank. As set forth below, we disagree with the court's statute of limitations ruling, which we reverse. We agree with the court, however, that the United States did not breach any express or implied-in-fact contract with the Bank. We therefore affirm the final judgment of dismissal.

BACKGROUND

I.

In 1950, Congress enacted the Organic Act of Guam, establishing the government for the U.S. Territory of Guam. See Organic Act of Guam, Pub. L. No. 630, 64 Stat. 384 (1950) (codified at 48 U.S.C. § 1421) ("the Organic Act"). The Organic Act provides that the "income-tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in Guam." 48

U.S.C. § 1421i(a).[1]  Those "income-tax laws" are governed by Title 26 of the United States Code, the Internal Revenue Code ("IRC").  Congress further provided that "[t]he income-tax laws in force in Guam pursuant to subsection (a) of this section shall be deemed to impose a separate Territorial income tax, payable to the government of Guam, which tax is designated the 'Guam Territorial income tax [i.e., GTIT].'" § 1421i(b).

By instituting the GTIT, Congress decided to "mirror" the IRC, rather than create an entirely new tax code for Guam.  In other words, except for those provisions of the IRC that are "manifestly inapplicable or incompatible with the intent" of § 1421i, IRC § 1 applies to Guam taxpayers as GTIT § 1.  See 48 U.S.C. § 1421i(d)(1).  See generally Sayre & Co. v. Riddell, 395 F.2d 407 (9th Cir. 1968) (explaining "mirroring" and that § 1421i created a "taxing structure for Guam 'mirroring' the provisions of the federal tax code").  In effect, the GTIT "mirrors" the IRC by substituting certain terms in the IRC for

---

[1]  In pertinent part, 48 U.S.C. § 1421i provides:

(a) Applicability of Federal laws; separate tax

The income-tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in Guam: Provided, That notwithstanding any other provision of law, the Legislature of Guam may levy a separate tax on all taxpayers in an amount not to exceed 10 per centum of their annual income tax obligation to the Government of Guam.

(b) Guam Territorial income tax

The income-tax laws in force in Guam pursuant to subsection (a) of this section shall be deemed to impose a separate Territorial income tax, payable to the government of Guam, which tax is designated the "Guam Territorial income tax."

terms pertinent to Guam, such as replacing "United States" with "Guam." See § 1421i(e) ("Substitution of terms"). In order to relieve extra administrative burden, the GTIT is collected and disbursed by Guam, instead of by the U.S. Treasury. See, e.g., Bank of Am. v. Chaco, 539 F.2d 1226, 1227 (9th Cir. 1976) ("[T]he enactment of . . . the territorial income tax was done primarily to relieve the United States Treasury of the necessity of making direct appropriations . . . ."). In that way, the GTIT acts as a U.S. federal income tax for those living in Guam, who would otherwise not have to pay U.S. federal income tax.

The U.S. Treasury is authorized to issue USGOs, such as Treasury bills and bonds. See, e.g., 5 U.S.C. § 301; 12 U.S.C. § 391; 31 U.S.C. §§ 3102–3104 (pertaining to bonds, notes, and Treasury bills); 31 U.S.C. § 3121 (authorizing the Secretary of the Treasury to prescribe rules and regulations pertaining to USGOs). While USGOs, and the interest earned on them, are typically subject to federal income tax for U.S. taxpayers, see generally 26 U.S.C. § 61 (including interest in definition of "gross income"), USGOs are "exempt from taxation by a State or political subdivision of a

State," 31 U.S.C. § 3124(a)[2]; see 31 C.F.R. § 356.32 ("exempt from taxation by a State or political subdivision of a State").  Treasury regulations also state that USGOs "shall be exempt from all taxation now or hereafter imposed on the principal or interest thereof by any State, or any of the possessions of the United States, or by any local taxing authority."  31 C.F.R. §§ 309.4, 340.3, 345.5.  In addition to the aforementioned regulations that explicitly exempt USGOs from taxation imposed by a possession, other Treasury regulations define "State" to include "any . . . territory or possession of the United States."  31 C.F.R. § 357.2.  At no time, however, have there been statutes or regulations that explicitly exempt USGOs from taxation by the GTIT.

II.

The facts pertinent to this appeal are not in dispute and are set forth in the decision of the Court of Federal Claims.  See generally Dismissal Order, 80 Fed. Cl. at 739.  The Bank is a resident of Guam and, in 1978, it began purchasing USGOs, including Treasury bills and bonds, each imprinted with a statement "that they were 'exempt from all taxation now or hereafter imposed . . . by . . . any of the possessions of the United States.'"  Bank's Compl. ¶ 7.  Although USGOs purchased after 1986 were

---

[2]    Section 3124 provides:

(a) Stocks and obligations of the United States Government are exempt from taxation by a State or political subdivision of a State.  The exemption applies to each form of taxation that would require the obligation, the interest on the obligation, or both, to be considered in computing a tax, except—

(1) a nondiscriminatory franchise tax or another nonproperty tax instead of a franchise tax, imposed on a corporation; and

(2) an estate or inheritance tax.

31 U.S.C. § 3124(a).  The two exceptions listed in § 3124(a)(1)–(2) are not relevant to this appeal.

no longer issued in paper form and therefore could not include the printed statement, various federal regulations maintained the language previously printed on the USGOs. See, e.g., 31 C.F.R. § 309.4 (Treasury Bills); 31 C.F.R. § 340.3 (Treasury Bonds); 31 C.F.R. § 356.32 (Treasury Bills, Notes, and Bonds).[3]

On January 24, 2001, the Director of the Guam Department of Revenue and Taxation ("GDRT") issued a Notice of Deficiency to the Bank for tax years 1992–94, contending that the Bank owed GTIT taxes on the interest earned on the Bank's USGOs. In response, the Bank initiated a suit in the United States District Court for the District of Guam, contending that Guam could not, through the GTIT, collect taxes on USGOs. Bank of Guam v. Dir. of Dep't of Revenue & Taxation, No. 01-00016, 2002 U.S. Dist. LEXIS 9662 (D. Guam May 14, 2002) ("Guam Tax Ruling"). Ruling to the contrary, the court decided that the Ninth Circuit's decision in Gumataotao v. Director of Department of Revenue & Taxation, 236 F.3d 1077 (9th Cir. 2001), "directly contradicts the petitioner's assertion that the respondent erred when he determined that Guam could tax the interest income on [bonds]." Guam Tax Ruling, 2002 U.S. Dist LEXIS 9962, at *7. Agreeing with Gumataotao, the court expressly held that the "GTIT does not exempt interest paid to Guam residents from [USGOs]." Id. at *6. Thus, the court dismissed the Bank's claim pursuant to Fed. R. Civ. P. 12(b)(6) accordingly. Id. at *7.

---

[3] We recognize that the statutes and regulations governing the USGOs, and in particular 31 U.S.C. § 3124 (providing the tax exemption for USGOs), have been slightly amended and modified during the period beginning with the Bank's initial purchase of USGOs in 1978 through its most recent purchases impacted by this appeal. Neither party, however, has relied on these modifications to support its position and, in fact, both parties primarily focus on language that has remained relatively constant—namely, the "taxation by" or "imposed by" language. Thus, for purposes of this opinion, we assume, unless noted otherwise, that these slight modifications over the relevant years do not substantively impact our analysis.

Subsequently, instead of appealing the district court's decision to the Court of Appeals for the Ninth Circuit, the Bank settled with the GDRT, paying the GTIT taxes owed and abandoning its case. Dismissal Order, 80 Fed. Cl. at 743.

III.

On January 17, 2007, the Bank filed its four-count complaint in the Court of Federal Claims, putting forth many of the same arguments it had advanced in the District Court of Guam, but as breach of contract claims. The Bank requested a monetary award equaling the amount of tax it paid in settlement with the GDRT "for all open tax years through and including 2001" plus the amount of tax it paid to the GDRT commencing in 2002. Bank's Compl. ¶¶ 12, 20. The first count of the complaint alleged that, because Guam sought to collect GTIT on income from the USGOs, the United States had breached a contractual promise that income from the USGOs would be exempt from taxation imposed by a possession. Id. ¶¶ 18–20. The second count contended that all bond contracts should be reformed "to contain an obligation on the part of the United States government, requiring it to reimburse and indemnify the Bank." Id. ¶ 26. In its third count, the Bank alleged an implied-in-fact contract requiring the United States to reimburse the Bank all taxes it had paid on the USGOs. Id. ¶ 30. Finally in count four, because the Bank "expect[ed] to continue to purchase and hold USGOs," and because collecting the GTIT on USGOs amounted to a breach of present and future USGO contracts, the Bank sought declaratory relief requiring the government to "reimburse the Bank on a forward basis for all sums which the Bank will hereafter be obliged to pay." Id. ¶¶ 33–35; id. WHEREFORE clause ¶ 3.

The government filed motions to dismiss all counts under RCFC 12(b)(1) and 12(b)(6). Pursuant to RCFC 12(b)(1), the government argued that the Court of Federal Claims lacked jurisdiction over all of the Bank's contract claims because those claims were barred by the Tucker Act's, 28 U.S.C. § 1491(a), statute of limitations. See 28 U.S.C § 2501 (requiring filing "within six years after such claim first accrues"). In particular, the government contended that, even assuming that some contract was breached, any possible date of such breach was not within six years of when the Bank filed suit, January 17, 2007, and was therefore outside the statute of limitations. In addition and specific to the Bank's demand for declaratory relief, the government contended that the court lacked jurisdiction over the Bank's demand because it was not based on contracts in existence. Alternatively, the Government moved to dismiss all counts for failure to state a claim pursuant to RCFC 12(b)(6), arguing that the contract claims were meritless because the Ninth Circuit's Gumataotao decision had already rejected the Bank's exact argument.

Considering first the Government's contention that the Bank's suit was barred by the six-year statute of limitations, the court ruled that:

> [t]he filing of the Notice of Deficiency in January 2001 . . . constituted an actual breach . . . . Plaintiff filed suit within six years of this actual breach. Defendant's motion to dismiss for lack of jurisdiction based on the time bar of the statute of limitations therefore is denied.

Dismissal Order, 80 Fed. Cl. at 746. Subsequently, however, the court dismissed the Bank's breach of contract claims with respect to all tax years prior to 2001 pursuant to RCFC 12(b)(1). Dismissal Order, 80 Fed. Cl. at 753.

Finding numerous decisions of the Ninth Circuit on similar issues instructive, the court then dismissed the Bank's express contract, implied-in-fact contract, and

reformation counts under RCFC 12(b)(6). Id. at 751–54. In particular, the court agreed with the reasoning in the Bank of America and Gumataotao decisions. The 1976 decision in Bank of America analyzed many of the same statutes that the Court of Federal Claims faced in this case, including Guam's Organic Act, and ruled that the GTIT "was not a tax imposed by Guam," but instead imposed by Congress. 539 F.2d at 1227–28. At the same time, the Court of Federal Claims read the Gumataotao decision as answering the question before it, although in the context of tax claims—namely, whether USGOs are exempt from taxation by the GTIT. 236 F.3d at 1079–82. The Gumataotao court definitively answered in the negative, ruling that the GTIT "does not make interest from U.S. bonds non-taxable for Guam residents" because "Congress, not the local legislature of Guam, imposed the tax on interest from federal bonds." Id. at 1081–82.

Finally, the court dismissed the Bank's declaratory relief count under RCFC 12(b)(1). Dismissal Order, 80 Fed. Cl. at 747. In doing so, the court highlighted its limited jurisdiction to entertain declaratory relief and determined that the Bank's declaratory count did not fall within this limited jurisdiction. Id. The court also noted that "to the extent that [the declaratory relief] presumes a money judgment under the [other contract counts]; it has been orphaned." Id. After the court dismissed the Bank's suit in its entirety, the Bank filed a motion for reconsideration, which the court denied. The court entered judgment accordingly and the Bank timely appealed. We have appellate jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

DISCUSSION

On appeal, the Bank suggests that the Court of Federal Claims erred in dismissing all of its counts for numerous reasons. First, regarding the court's dismissal pursuant to RCFC 12(b)(1) of the breach of contract claims with respect to all tax years prior to 2001, the Bank contends that the court's decision is inconsistent. Specifically, the Bank highlights that the court determined that the 2001 Notice of Deficiency was the breach, thus triggering the six-year statute of limitations, and that the court then found that the Bank filed its contract claims within the requisite six-year limitations period. Yet, according to the Bank, the court later dismissed pursuant to RCFC 12(b)(1) all claims for breach of contract relating to all tax years prior to 2001. The Bank points out that the court did so despite the fact that the 2001 Notice of Deficiency contained tax deficiencies for tax years prior to 2001.

Next, the Bank contends that the court's RCFC 12(b)(6) dismissal of its contract claims was erroneous. According to the Bank, it had a contract with the government that exempted USGOs from taxation by the GTIT. First, the Bank points out that USGOs are contracts with the United States. The Bank then argues that U.S. Treasury statutes and regulations, for example 31 C.F.R. §§ 356.32(a) and 357.2, state that these USGOs are exempt from taxation by any State, which is defined to include U.S. possessions. Thus, according to the Bank, because the United States authorized the statutes and regulations exempting USGOs from taxation by Guam, and because the United States Congress then authorized Guam to tax its USGOs, the United States breached its contractual obligation with the Bank.

Specific to its implied-in-fact contract claim, the Bank argues that, if the language of the statutes and regulations governing the USGOs does not exempt them from taxation by the GTIT, then the United States exhibited conduct that implies a contract exempting USGOs from the GTIT. In particular, the Bank points to documents obtained through an August 22, 2002 Freedom of Information Act ("FOIA") request, allegedly evidencing that the Bank, Guam, and the United States all understood that "the Treasury regulations exempted the bond income from taxes by territories and possessions."

Regarding its reformation count, the Bank argues that, if the contract is read to only exempt "taxes legislated or imposed by Guam on its own authority," then it is entitled to reformation to reflect the true understanding between the United States and the Bank. Specifically, according to the Bank, the contract should reflect that at all times the United States represented that income from the bonds was not taxable by the GTIT. Concerning its claim for declaratory relief, the Bank argues that the court had jurisdiction over its claim for declaratory relief because it is ancillary to the claims for monetary relief properly before the court. The Bank, however, recognizes that the Court of Federal Claims has limited ability to hear claims for declaratory relief.

We address each of the Bank's contentions in turn.

I.

As an initial matter, we first consider whether the court properly dismissed portions of the Bank's contract claims pursuant to RCFC 12(b)(1). "An appellate federal court must satisfy itself not only of its own jurisdiction, but also of that of the lower courts in a cause under review," and therefore we must determine whether the Court of

Federal Claims properly dismissed the Bank's contract claims for lack of subject matter jurisdiction. Mitchell v. Maurer, 293 U.S. 237, 244 (1934); Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. Dep't of Homeland Sec., 490 F.3d 940, 944 (Fed. Cir. 2007). This Court reviews a dismissal of a claim for lack of jurisdiction by the Court of Federal Claims de novo. Adair v. United States, 497 F.3d 1244, 1250 (Fed. Cir. 2007). A well pleaded allegation of a breach of either an express or implied-in-fact contract is sufficient to overcome challenges to jurisdiction. Trauma Serv. Group v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997). Any claim for relief, however, must be "filed within six years after such claim first accrues." 28 U.S.C § 2501.

We hold that the Court of Federal Claims did have jurisdiction over the Bank's breach of contract claims for all tax years prior to 2001. We therefore reverse the court's decision to the contrary. In order for the Court of Federal Claims to have jurisdiction, the statute of limitations requires filing suit within six years after a claim—in this case, the alleged breach of contract—accrues. See 28 U.S.C. § 2501. Because the Bank filed suit on January 17, 2007 and the Notice of Deficiency issued on January 24, 2001, and because the Notice of Deficiency contained tax assessments for tax years prior to 2001, the court erred in dismissing the Bank's breach of contract claims for all years prior to 2001. Thus, we reverse the court's dismissal pursuant to RCFC 12(b)(1) for all tax years prior to 2001 and hold that subject matter jurisdiction was proper for those claims. This does not prevent us from dismissing those claims, however, because, as explained below, those claims were properly dismissed pursuant to RCFC 12(b)(6). See Adair, 497 F.3d at 1258 (reversing the Court of Federal Claims'

dismissal pursuant to RCFC 12(b)(1), yet addressing the merits and affirming based on RCFC 12(b)(6)).

II.

We turn now to the dismissal of the Bank's express and implied contract claims pursuant to RCFC 12(b)(6). "The question of whether a complaint was properly dismissed for failure to state a claim upon which relief could be granted is one of law, which we review independently." Highland Falls-Fort Montgomery Cent. Sch. Dist. v. United States, 48 F.3d 1166, 1170 (Fed. Cir. 1995). In order to avoid dismissal for failure to state a claim, the complaint must allege facts "plausibly suggesting (not merely consistent with)" a showing of entitlement to relief. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007); see Cambridge v. United States, 558 F.3d 1331, 1335 (Fed. Cir. 2009). The factual allegations must be enough to raise a right to relief above the speculative level. See Twombly, 550 U.S. at 555. "In ruling on a 12(b)(6) motion to dismiss, the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff." Cambridge, 558 F.3d at 1335. This court, however, reviews questions of law and legal interpretations de novo. Adair, 497 F.3d at 1250; Trauma Serv. Group, 104 F.3d at 1325.

A.

A party alleging either an express or implied-in-fact contract with the government "must show a mutual intent to contract including an offer, an acceptance, and consideration." Trauma Serv. Group, 104 F.3d at 1325. Furthermore, "[a] contract with the United States also requires that the Government representative who entered or

ratified the agreement had actual authority to bind the United States." Id. "The question of whether a contract creates a duty is . . . a question of law." Id.

In order to frame the issue of the government's alleged breach of an express contract, it is helpful to identify what is not in dispute. First, it is not disputed that, with the purchase of the USGOs, the Bank and the United States entered into a contract. See, e.g., Estate of Berg v. United States, 687 F.2d 377, 379-83 (Ct. Cl. 1982) (treating U.S. Treasury Bonds as a contract with the government); see also Zelman v. Gregg, 16 F.3d 445, 446 (1st Cir. 1994) ("Broadly speaking and with certain qualifications, government bonds are viewed as contracts between the government and the owners, whose terms are fixed by statutes, regulations and offering circulars.").[4] Indeed, the Bank acknowledges that "government bonds are contracts between the United States and the bond holders." Bank's Br. 16. It is also clear that the terms and duties of any express contract are defined by the federal laws and regulations pertaining to USGOs. See, e.g., United States v. Chandler, 410 U.S. 257, 260–61 (1973) (stating that transfer restrictions on Savings bonds could not be modified to contradict the terms "clearly spelled out by the Secretary in his regulations" and "authorized by Congress"); Free v. Bland, 369 U.S. 663, 669–70 (1962) (holding that Federal statutes and regulations "govern[ ] the interpretation . . . of the rights and obligations created by the Government bonds" (quoting Bank of Am. Trust & Savs. Ass'n v. Parnell, 352 U.S. 29, 34 (1956))); see also 31 U.S.C. §§ 3102-4, 3111, 3121 (authorizing the Secretary of the Treasury to pass regulations governing USGOs). The Bank acknowledges this point as well, stating

---

[4] We have not previously addressed some of the exact issues presented in this appeal and, thus, while not binding, the decisions of other regional circuits are persuasive authority and instructive. See, e.g., Summit Tech., Inc. v. Nidek Co., 435 F.3d 1371, 1376–77 (Fed. Cir. 2006).

that its contract "rights are 'governed solely' by the regulations." Bank's Br. 23. Thus, in determining the duties required by the express contract between the Bank and the United States, we look to the federal laws and regulations governing the USGOs.

The United States Code exempts USGOs, and likewise interest earned on USGOs, "from taxation by a State or political subdivision of a State." See 31 U.S.C. § 3124(a); see also 31 C.F.R. § 356.32(a) (stating that USGOs are "subject to all applicable taxes imposed under the Internal Revenue Code . . . . Under [§ 3124], the securities are exempt from taxation by a State or political subdivision of a State"). By regulation, Guam is considered a "State" for purposes of this exemption. See, e.g., 31 C.F.R. § 357.2 ("State means any . . . territory or possession of the United States."). Language in other regulations exempts USGOs "from all taxation . . . imposed on the principal or interest thereof by any State, or any of the possessions of the United States, or by any local taxing authority." See, e.g., 31 C.F.R. §§ 309.4, 340.3. Thus, the terms of the express contract between the Bank and the United States provide that the USGOs will be exempt "from all taxation . . . imposed . . . by" Guam and, therefore, we must determine whether the GTIT falls into this category. It does not.

Focusing on the relevant question, it is quite clear that Congress, not Guam, enacted, authorized, or otherwise imposed the GTIT. Consequently, it is clear that the Bank's USGO contracts do not contain a duty to exempt them from taxation by the GTIT. Thus, there is no breach for imposing the GTIT on the USGOs. Importantly, in arguing that the contracting and breaching party is the government, as it must for jurisdiction in the Court of Federal Claims, see, e.g., Ransom v. United States, 900 F.2d 242, 245 (Fed. Cir. 1990) (affirming dismissal of breach of contract claims because

there was no contract with the government), the Bank emphasized that Guam has nothing to do with the GTIT except for collecting it. Indeed, the Bank repeatedly conceded during briefing that Congress has nearly everything to do with the GTIT— namely, Congress "authorized," "enabled," "caused," and otherwise "imposed" the GTIT. See, e.g., Bank's Br. 16 ("A review of the complaint will show that the Bank has consistently maintained that it was Congress . . . which caused this tax to apply."); id. 17 ("Congress had authorized or enabled the tax which the Bank had to pay to Guam"); Bank's Compl. ¶ 13 ("Congress . . . authoriz[ed] the imposition of the Guam territorial income tax" on the USGOs). The Bank even made this same admission at oral argument:

> Court: "Do you say that Gumataotao was wrong in its holding that the U.S. Congress imposed this tax?"

> Bank: "No. And our complaint alleges that Congress imposed this tax."

Oral Arg. 8:10–21, Mar. 6, 2009, available at http://oralarguments.cafc.uscourts.gov.

Regardless of the Bank's admissions, it is clear that Congress enacted, through 48 U.S.C. § 1421i, the GTIT, which "mirrors" the federal IRC. See, e.g., Ramsey v. Chaco, 549 F.2d 1335, 1338 (9th Cir. 1977) ("Section 31 of the Organic Act . . . [requires] substantive changes in the income tax laws of Guam must be left to Congress."); Sayre, 395 F.2d at 410 (the Organic Act "creat[ed] a separate integral taxing structure for Guam 'mirroring' the provisions of the federal tax code"). Further supporting the proposition that Congress "imposed" the GTIT, Guam cannot substantively change the provisions of the GTIT to be inconsistent with the IRC; yet

Congress can make such changes.[5]  See, e.g., Limtiaco v. Camacho, 549 U.S. 483, 489 n.2 (2007) ("Guam's territorial legislature cannot redefine terms used in a federal statute," and in particular Guam's Organic Act); Gov't of Guam v. Koster, 362 F.2d 248, 252 (9th Cir. 1966) ("The United States Commissioner of Internal Revenue may not prescribe any regulations which are not consistent with the federal tax statutes or which add a restriction to a statute which is not justified by statutory language or the intent of Congress. . . . Guam tax officials are similarly limited." (citations omitted)).  Although Guam collects the GTIT, this "was primarily done to relieve the United States Treasury of the necessity of making direct appropriations" and does not change the fact that the GTIT was enacted by, authorized by, and "imposed by" Congress.  See Bank of Am., 539 F.2d at 1227–28.

Although addressing tax claims rather than contract claims, the reasoning in Bank of America and Gumataotao also supports our conclusions.  Two years before the Bank began purchasing USGOs, the appellant in Bank of America contended that Guam's enactment of a business privilege tax violated 12 U.S.C. § 548, which allowed a local government to tax the net income of a business only once.  Bank of Am., 539 F.2d at 1227.[6]  It was disputed whether Guam imposed the GTIT by collecting it and

_____

[5]  We note that, after 1986, Congress authorized Guam to "de-link" from the IRC, thereby allowing Guam to pass its own tax legislation replacing the IRC.  See generally Gumataotao, 236 F.3d at 1081 (explaining Guam's ability to "de-link").  Guam, however, has not done so, and the mere fact that it may "de-link" at a future time does not affect our analysis.  Indeed, during oral argument, the Bank stated that simply because Guam may "de-link" has "nothing" to do with its arguments on appeal.  Oral Arg. 5:18-30.

[6]  Because § 548 considered Guam a "state," it was not disputed that Guam locally imposed the business privilege tax pursuant to § 548 and that § 548 precluded Guam from locally taxing the net business income twice.  Bank of Am., 539 F.2d at 1227 n.1.

therefore whether it violated § 548 by enacting and imposing the business privilege tax in conjunction with the GTIT.  Id. at 1227.  The court found no violation, stating that "there is no dispute that the [GTIT] was enacted by Congress" and therefore "the [GTIT] is not imposed by Guam."  Bank of Am., 539 F.2d at 1227–28.  Subsequently in Gumataotao, the Ninth Circuit not only analyzed many of the same statutes and regulations pertinent to this appeal, but also addressed the nearly identical issue— whether USGOs are exempt from taxation by the GTIT.  236 F.3d at 1077.  Ruling that USGOs were not exempt from taxation by the GTIT, the court explained that "Congress, not the local legislature of Guam, imposed the tax on interest from federal bonds."  Id. at 1082.

Nor can the various documents offered as parol evidence by the Bank change our holding that the contract between the Bank and the United does not exempt USGOs from taxation by the GTIT.  Because the laws and regulations governing USGOs, and thus the terms of the Bank's express contract, clearly do not exempt USGOs from taxation by the GTIT, such parol evidence cannot be considered to interpret the Bank's contract with the United States.  See, e.g., McAbee Constr., Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir. 1996) ("[I]f the 'provisions are clear and unambiguous, they must be given their plain and ordinary meaning,' and the court may not resort to extrinsic evidence to interpret them." (citation omitted)).

For the above reasons, we hold that the Bank cannot establish that its express USGO contract with the government included a duty exempting USGOs from taxation by the GTIT.  Thus, the government has not breached the USGO contract by imposing

the GTIT. We therefore affirm the Court of Federal Claims's dismissal of the Bank's express contract count pursuant to RCFC 12(b)(6).

B.

Having determined that, while there is an express contract between the Bank and the government, it does not contain a duty to exempt the USGOs from taxation by the GTIT, we now turn to the Bank's claim that the government breached a contract implied-in-fact. An implied-in-fact contract requires a "meeting of the minds, which although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in light of the surrounding circumstances, their tacit understanding." Trauma Serv. Group, 104 F.3d at 1326 (quoting Hercules Inc. v. United States, 516 U.S. 417, 423–24 (1996)); Atlas Corp. v. United States, 895 F.2d 745, 754 (Fed. Cir. 1990). In this case, in order to prevail on appeal, the Bank must be able to assert facts that can prove it had an implied-in-fact contract with the government specifically exempting USGOs from taxation by the GTIT.

However, "[i]t is well settled that the existence of an express contract precludes the existence of an implied-in-fact contract dealing with the same subject matter, unless the implied contract is entirely unrelated to the express contract." Schism v. United States, 316 F.3d 1259, 1278 (Fed. Cir. 2002); see, e.g., Trauma Serv. Group, 104 F.3d at 1326; Atlas, 895 F.2d at 754–55. Accordingly, because we have determined that the Bank has an express contract with the United States dealing with the pertinent subject matter, we affirm the dismissal of its implied-in-fact contract claims. Indeed, the Bank has admitted both that its purchase of USGOs created an express contract with the government, see Bank's Br. 16, and that this contract is "'governed solely' by the

regulations" pertaining to USGOs, see id. at 23. By explicitly addressing tax exemptions in § 3124 and subjecting the USGOs "to all taxes imposed under the Internal Revenue Code," statutes and regulations clearly contemplate and cover any tax exemptions afforded to USGOs. See, e.g., 31 U.S.C. § 3124; 31 C.F.R. §§ 309.4, 340.3 (addressing taxation and applying the Internal Revenue Code to Treasury bills and bonds). As such, the Bank's implied-in-fact contract claim is foreclosed because "regulations and statutes expressly address" tax exemption of USGOs, and "an 'implied-in-fact contract cannot exist if an express contract already covers the same subject matter.'" Schism, 316 F.3d at 1278 (quoting Trauma Serv. Group, 104 F.3d at 1326) (dismissing for failure to state a claim because an express contract foreclosed the possibility of an implied-in-fact contract)); see, e.g., Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343–44 (Fed. Cir. 2008) (upholding dismissal of implied-in-fact contract claim for certain costs because the government and the plaintiff entered into an express "cost-share agreement"); Atlas, 895 F.2d at 755 (affirming dismissal for failure to state a claim of an implied-in-fact contract for "stabilization costs" because such costs were not "entirely unrelated" to terms of the express contract, which included provisions for costs); ITT Fed. Support Servs., Inc. v. United States, 531 F.2d 522, 528 (Ct. Cl. 1976) (finding that the existence of an express contract providing for "payment of [plaintiff's] costs and an additional fixed fee for [its] post-termination work" precluded an implied-in-fact contract providing for additional compensation).

For the foregoing reasons, the Bank cannot prove it had an implied-in-fact contract entitling it to the requested relief. We therefore affirm the Court of Federal Claims dismissal of that claim pursuant to RCFC 12(b)(6).

III.

Having affirmed the dismissal of the Bank's express contract and implied-in-fact contract claims, we now address its reformation claim. In order to have a contract reformed, the party seeking reformation under the doctrine of mutual mistake must allege: "(1) the parties to the contract were mistaken in their belief regarding a fact; (2) that mistaken belief constituted a basic assumption underlying the contract; (3) the mistake had a material effect on the bargain; and (4) the contract did not put the risk of the mistake on the party seeking reformation." Atlas, 895 F.2d at 750. In order to be entitled to relief, the Bank must be able to show that both parties mistakenly believed specifically that USGOs were exempt from taxation by the GTIT.

Because the Bank cannot prevail on several requisite aspects of its reformation claim, the Court of Federal Claims did not err in dismissing the claim pursuant to RCFC 12(b)(6). First, the Bank has not alleged a mutual mistake of fact that, in this case, can support reformation. Rather, it alleges at most mistake of law with respect to the taxing of interest on USGOs that is contrary to statute and regulation. See, e.g., William Cramp & Sons Ship & Engine Bldg. Co. v. United States, 239 U.S. 221, 227 (1915) ("[T]he failure of the officers of the claimant company to apprehend the legal effect thereof was not the fault of the United States or its officers, and was not the subject of reformation."); Snell v. Atl. Fire & Marine Ins. Co., 98 U.S. 85, 88 (1878) ("[A] mere mistake of law, stripped of all other circumstances, constitutes no ground for the reformation of written contracts."); William Cramp & Sons Ship & Engine Bldg. Co. v. United States, 46 Ct. Cl. 521, 1910 WL 954, *10 (1911) (stating that a contract cannot

2008-5078                                    21

"be reformed on the ground of mistake arising from ignorance of the law" (citing Hunt v. Rhodes, 26 U.S. (1 Pet.) 1 (1828))), aff'd 239 U.S. 221 (1915).

Also fatal to the Bank's claim is the fact that, even assuming the Bank could show that the government at some point had a mistaken belief about the tax status of USGOs, there is no indication that this alleged mistaken belief "constituted a basic assumption underlying the contract" about a term that the parties could negotiate. See Atlas, 895 F.2d at 750 (requiring a party alleging reformation to show that "the parties recognize[d] the existence of a fact about which they could negotiate"). Specifically, the creation of the contract between the Bank and the government—i.e., purchasing the USGOs—does not involve typical contract negotiations. Rather, as explained above, the Bank simply purchases the USGOs subject to the laws and regulations governing them. Thus, because the parties did not negotiate any terms pertaining to the USGOs, they could not form a mistaken belief about a fact that was subject to negotiations. See id. at 752 ("[T]he plaintiffs' allegations of their 'mistake' do not show that they held an erroneous belief concerning a fact whose existence the parties could recognize and about which they could negotiate agreement."). The parties therefore could "not have contemplated the [contract provision at issue] when [they] entered into the contract"

and, as a result, the parties "would not have reached an agreement" about exempting USGOs from the GTIT.[7] Id.

In addition, there is no indication that any alleged "mistaken belief" "had a material effect on the bargain"—i.e., that the contract was entered into because of this mistaken belief. For example, there is absolutely no suggestion that, in return for exempting the Bank's USGOs from taxation by the GTIT, the government required the Bank to pay more for its bonds. Indeed, because the parties did not negotiate and thus did not contemplate the "mistaken belief" at issue, as explained above, any such "mistaken belief" did not have a material effect on the bargain.

For the foregoing reasons, we affirm the dismissal of the Bank's reformation claim pursuant to RCFC 12(b)(6).[8]

---

[7] It is difficult not to have doubts about the Bank's "mistaken belief" because the Bank admitted that, when it began purchasing the USGOs and thus entered into its "contract," it initially listed the USGOs as taxable. See Pl. Mot. for Recon. In other words, the Bank could not have thought that the USGOs were tax free when it began purchasing those USGOs. Thus, although the Bank may currently believe that USGOs are exempt from taxation by the GTIT, this belief did not "constitute[ ] a basic assumption underlying the contract." See Atlas, 895 F.2d at 750. Furthermore, in the reformation count in its complaint, the Bank specified that when it purchased the USGOs it mistakenly believed that "Congress did not authorize the levy of any [GTIT]" and "that income from such USGOs was free of all taxes by possessions." Bank's Compl. ¶¶ 22, 24. Two years before the Bank began purchasing the USGOs, however, the law in the Ninth Circuit was clear—the GTIT was imposed by Congress, not a possession. See Bank of Am., 539 F.2d at 1227–28. As such, the Bank's belief that the GTIT was imposed by Guam was simply ignorance of established law, which is insufficient for contract reformation. See, e.g., Snell, 98 U.S. at 88; William Cramp & Sons, 1910 WL 954, at *10.

[8] As we have explained, even assuming that the Bank could show that the government had a mistaken belief, at some point, about the tax status of the USGOs, its reformation claim would fail nonetheless. For this reason, the documents offered by the Bank, which relate solely to the government's alleged mistaken belief, do not change our conclusion.

IV.

Finally, we see no reason to disturb the Court of Federal Claims's dismissal of the Bank's claim for declaratory relief. The Bank essentially requests, in the event that we interpret its USGO contracts to preclude taxation by the GTIT, a declaration from this court preventing the government from acting contrary to that interpretation. The Court of Federal Claims, and likewise this court, typically declines jurisdiction over this type of relief—requesting a prospective equitable declaration pertaining to contracts that are not yet breached nor require payment of money presently due. See, e.g., Katz v. Cisneros, 16 F.3d 1204, 1209 (Fed. Cir. 1994) (dismissing declaratory claims for lack of subject matter jurisdiction because "once the propriety of HUD's interpretation of the regulation has been adjudicated it will act accordingly, and any monetary consequences will flow through the contractual scheme"). Regardless, the Bank could only prevail on its declaratory claim if it prevailed on one of its first three contract claims—specifically, the express contract, implied-in-fact contract, and reformation counts. Because we have affirmed the dismissal of all of those claims, however, it is impossible for the Bank to prevail on its request for declaratory relief.

CONCLUSION

In sum, although we disagree with the Court of Federal Claims's decision to dismiss pursuant to RCFC 12(b)(1) the Bank's breach of contract claims with respect to all tax years prior to 2001 and, therefore, reverse that ruling, the Court of Federal Claims properly dismissed all of the Bank's claims on other grounds, as described in this opinion. We therefore affirm the court's ultimate judgment in favor of the government.

<u>AFFIRMED</u>