NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MCCLENDON N. WATERS III,**

*Plaintiff-Appellant*

**v.**

**UNITED STATES,**

*Defendant-Appellee*

---

2019-1017

---

Appeal from the United States Court of Federal Claims in No. 1:17-cv-00699-EDK, Judge Elaine Kaplan.

---

Decided: May 20, 2019

---

MCCLENDON N. WATERS, III, Tampa, FL, pro se.

ISAAC B. ROSENBERG, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by JOSEPH H. HUNT, TARA K. HOGAN, ROBERT EDWARD KIRSCHMAN, JR.

---

Before REYNA, BRYSON, and STOLL, *Circuit Judges.*

PER CURIAM.

Mr. McClendon N. Waters III seeks review of the United States Court of Federal Claims' dismissal of his Tucker Act and Military Pay Act claims. Because we discern no reversible error in the Court of Federal Claims' decision, we affirm.

BACKGROUND

I

Prior to his retirement, Mr. Waters served in the United States Marine Corps for over twenty-five years. Between 1992 and 2007, Mr. Waters received numerous commendations and awards, ultimately resulting in his promotion to the rank of lieutenant colonel and command of the Marine Cryptologic Support Battalion. In 2010, the Marine Corps received an allegation that Mr. Waters was engaged in an inappropriate relationship with the wife of a gunnery sergeant. Mr. Waters was relieved of his command, and an investigation soon followed.

After reviewing the evidence, including transcripts of online conversations, the investigating officer concluded that Mr. Waters had "established and maintained an inappropriate relationship of a sexual nature with a woman other than his wife, and a woman that he knew to be married to an enlisted Marine." S. App'x 43. The investigating officer recommended that Mr. Waters be charged with a violation of Article 133 of the Uniform Code of Military Justice ("UCMJ"), titled "Conduct Unbecoming an Officer and a Gentleman." The investigating officer specifically found, however, that "there [was] not sufficient evidence to prove adultery as defined in article 134" of the UCMJ. S. App'x 42.

On October 5, 2010, Mr. Waters's commanding officer, Colonel Dimitri Henry, endorsed the investigative report and recommended approval of the investigating officer's findings and recommendations. The report was

subsequently endorsed by the commander of Marine Corps Base Quantico, as well as Lieutenant General George J. Flynn. On October 14, 2010, Lieutenant General Flynn sent Mr. Waters a notice of intent to impose non-judicial punishment based on the conduct described in the report. The notice advised Mr. Waters of his right to demand trial by court martial in lieu of non-judicial punishment. Mr. Waters responded by waiving his right to a court martial, indicating that he intended to admit to the charged offense, and acknowledging that he had consulted with an attorney.

On November 15, 2010, Lieutenant General Flynn conducted a hearing on the matter of Mr. Waters's non-judicial punishment. Lieutenant General Flynn read the charge against Mr. Waters as follows:

> You are charged with committing the following violations of the Uniform Code of Military Justice . . . Article 133, conduct unbecoming an officer and a gentleman; in that you, a married man on active duty as the Commanding Officer of Marine Cryptologic Support Battalion, did on diverse occasions at various locations from August 2008 through September 2010 wrongfully engage in an inappropriate relationship with . . . the wife of a Marine Corps Gunnery Sergeant, that was unduly familiar, personal, romantic, sexual, and under the circumstances with conduct unbecoming an officer and a gentleman.

S. App'x 50. Mr. Waters responded affirmatively when asked if he understood the charge, and when asked if he "had an inappropriate relationship with a wife of a Gunnery Sergeant who was [his] subordinate." S. App'x 50, 52.

Following the hearing, Lieutenant General Flynn imposed non-judicial punishment in the form of a punitive letter of reprimand and a two-month forfeiture of pay. Mr. Waters was advised of his right to appeal or to make a

statement in response to the punitive letter of reprimand. Mr. Waters elected not to appeal the imposition of non-judicial punishment or to make a statement.

On November 24, 2010, Lieutenant General Flynn submitted a report on Mr. Waters's non-judicial punishment to the Commandant of the Marine Corps. Lieutenant General Flynn stated that Mr. Waters's actions were "deplorable," opining that "a married Marine officer who engages in a sexual relationship with an enlisted Marine's wife is appalling." S. App'x 60. Lieutenant General Flynn concluded the report by determining that Mr. Waters's "knowing and willful disregard for the oath of office should bar him from continued service as a Marine Officer," and indicating that he would convene a Board of Inquiry ("BOI") to decide whether Mr. Waters should be separated from the Marine Corps. S. App'x 60.

That same day, Lieutenant General Flynn sent notice to Mr. Waters of the BOI. The notice informed Mr. Waters that as a retirement-eligible officer, the Board could recommend that Mr. Waters be retired, and that he could be retired at a lesser grade. The notice made clear that "the final decision as to retirement grade rests with the Secretary of the Navy." S. App'x 63.

Before the BOI was convened, however, Mr. Waters submitted a request for voluntary retirement. Mr. Waters stated that he understood that the "request is purely voluntary and, once submitted, can only be withdrawn with the permission of the Secretary of the Navy." S. App'x 64. Mr. Waters also stated his understanding that "the Secretary of the Navy has the plenary authority to determine the last grade in which [he] served satisfactorily, and may determine that [he] retire in a lesser pay grade than currently held." S. App'x 65. Mr. Waters admitted to committing the misconduct for which he was charged and attached a letter explaining his lapse of judgment and the potentially mitigating circumstances surrounding his transgressions.

Mr. Waters also included nine letters of recommendation from Marine Corps officers highlighting his stellar record and requesting that he be permitted to retire as a lieutenant colonel.

On January 3, 2011, Lieutenant General Flynn submitted his endorsement of Mr. Waters's voluntary retirement request to the Commandant. The endorsement stated:

> On 3 September 2010, an investigating officer was appointed to investigate allegations of an inappropriate personal relationship between Lieutenant Colonel Waters, who assumed command of Marine Cryptologic Support Battalion on 10 July 2009, and the wife of a gunnery sergeant within his command. The investigating officer opined that Lieutenant Colonel Waters was involved in an adulterous relationship from August 2008 to September 2010, and SNO was subsequently relieved of his command on 3 September 2010.

S. App'x 91. In light of these facts, Lieutenant General Flynn recommended that Mr. Waters be retired at the grade of major.

Following Lieutenant General Flynn's recommendation, the Commandant recommended to the Secretary that Mr. Waters be retired at the grade of major. The Commandant highlighted Mr. Waters's "inappropriate relationship of a sexual nature with the wife of a Marine gunnery sergeant." S. App'x 92. On April 4, 2011, the Secretary approved Mr. Waters's retirement "in the lesser grade of major." S. App'x 94.

On May 30, 2011, Mr. Waters messaged the general e-mail account for the Office of General Counsel of the Department of the Navy, requesting an "emergency delay in [his] retirement until [he] can formally present grievances" to the Secretary. S. App'x 107. The e-mail stated that

Mr. Waters had concerns about "possible prejudicial activity and unlawful command influence by individuals responsible for handling and disposing of [his] case." S. App'x 107. Mr. Waters indicated that he had "originally sent notice to the IG of the Marine Corps, but [his] understanding now [was] that only the separation authority has the power to take action." *Id.* The Navy did not respond to Mr. Waters's request and Mr. Waters's retirement took effect on June 1, 2011.

## II

On May 29, 2014, Mr. Waters submitted a petition to the Board of Correction of Naval Records ("BCNR"), requesting that his retirement rank be changed to lieutenant colonel and that certain "derogatory language" be removed from his record. S. App'x 113. Mr. Waters identified as his grounds for relief "unlawful command influence" and "prejudicial activity within the chain of command," as well as violations of notice requirements and his right to review new material added by the government to his record under the Secretary of the Navy Instructions, SECNAVINST 1920.6C. *Id.* With respect to his first ground for relief, Mr. Waters alleged that: (1) the online transcripts used as evidence in the investigation were obtained illegally by the gunnery sergeant; and (2) several of the superior officers involved in the investigation behaved inappropriately and were influenced by friendship with the gunnery sergeant or other improper motives. With respect to his second ground for relief, Mr. Waters alleged that Lieutenant General Flynn's statements that Mr. Waters "was involved in an adulterous relationship" with the spouse of a "gunnery sergeant within his command" in his endorsement to the Commandant constituted new and aggravating factual material that should have been provided to him for review and comment. *See* S. App'x 136–37.

The BCNR requested an advisory opinion from the Marine Corps, and, based in substantial part on the findings

in the advisory opinion, denied Mr. Waters's request.  The BCNR emphasized that Mr. Waters had been advised that formal evidentiary rules do not apply to non-judicial punishment.  The Board also highlighted that Mr. Waters "did not demand trial by court-martial, admitted to the misconduct detailed in the report of [non-judicial punishment], and did not appeal the [non-judicial punishment] or the punitive letter of reprimand."  S. App'x 140.  The BCNR agreed with the Marine Corps that the notice requirement at issue did not apply to Mr. Waters, and that, in any event, the allegations of Mr. Waters's "adulterous relationship" with a gunnery sergeant "within his command" were not new material.  S. App'x 141.

On May 25, 2017, Mr. Waters filed a complaint in the Court of Federal Claims seeking review of the BCNR's decision, as well as compensation under the Tucker Act or Military Pay Act.  On December 1, 2017, Mr. Waters moved to supplement the administrative record with a variety of materials related to the investigation, including news reports, photographs, and internal documents.  On May 3, 2018, the Government filed a motion to dismiss the claims, an alternative motion for judgment on the administrative record, and an opposition to Mr. Waters's motion to supplement the administrative record.

The Court of Federal Claims issued its decision on July 31, 2018.  First, the Court of Federal Claims dismissed Mr. Waters's claims under the Military Pay Act, 37 U.S.C. § 204, finding that Mr. Waters was not eligible for compensation under the Act because he had retired voluntarily.  Second, the Court of Federal Claims held that Mr. Waters had failed to demonstrate that introduction of the requested documents was necessary for judicial resolution of the action, as his "allegations, even if true, do not support a finding of bias sufficient to justify supplementation of the administrative record."  S. App'x 12.  Third, the Court of Federal Claims found that the Marine Corps did not violate Mr. Waters's rights under paragraph 2(a) of

SECNAVINST 1920.6C, as "Lieutenant General Flynn's endorsement contained nothing more than an accurate description of the known facts of the case." S. App'x 14. Finally, the Court of Federal Claims held that Mr. Waters was not subject to the notice requirements under paragraph 1(c) of SECNAVINST 1920.6C. Accordingly, the Court of Federal Claims dismissed Mr. Waters's Military Pay Act claims, granted judgment on the administrative record to the Government on Mr. Waters's Tucker Act claims, and denied Mr. Waters's motion to supplement the administrative record.

Mr. Waters appeals the decision of the Court of Federal Claims. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review de novo the Court of Federal Claims' dismissal of a complaint for failure to state a claim. *Bank of Guam v. U.S.*, 578 F.3d 1318, 1326 (Fed. Cir. 2009). Likewise, we "review a decision of the Court of Federal Claims granting or denying a motion for judgment on the administrative record without deference." *Chambers v. U.S.*, 417 F.3d 1218, 1227 (Fed. Cir. 2005). A decision on a motion to supplement the administrative record, however, is reviewed for abuse of discretion. *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1378 (Fed. Cir. 2009).

Mr. Waters initially challenges the Court of Federal Claims' decision based on multiple alleged misunderstandings and misrepresentations of the material facts of the case. In particular, Mr. Waters emphasizes: (1) a misquote by the court identifying Mr. Waters as an enlisted Marine; (2) the court's failure to address in any detail the allegedly illegal activities of the gunnery sergeant in procuring the online transcripts; (3) the court's failure to address the government's mishandling of complaints of domestic violence and invasions of privacy by the gunnery sergeant's spouse; (4) the court's dismissal of the evidence pertaining to the

close relationship between Colonel Henry and the gunnery sergeant; (5) the court's dismissal of his complaint to the Office of General Counsel; and (6) the court's failure to emphasize Mr. Waters's excellent military record.

With respect to the first issue, a review of the record demonstrates that the Court of Federal Claims did in fact wrongly state that Mr. Waters was described "as an enlisted Marine" in the investigative report. S. App'x 2. In so stating, the Court of Federal Claims misquoted the statement in the investigative report that Mr. Waters had an inappropriate relationship "with a woman . . . *that he knew to be married to an enlisted Marine*." S. App'x 43 (emphasis added). Contrary to Mr. Waters's argument, however, there is no evidence that the misquote by the Court of Federal Claims was anything but a simple drafting mistake. Indeed, the accurate description of Mr. Waters's background, rank and military record in the rest of the opinion belies any conclusion that the decision was influenced by this mistake. With respect to the sixth issue, though the Court of Federal Claims does not specifically highlight Mr. Waters's commendations and awards, they were part of the full record before the court, and there is no indication that they were not appropriately considered.

The issues raised in Mr. Waters's second through fourth points are likewise unconvincing. It is unclear how these allegations relate to Mr. Waters's right to compensation under the Military Pay Act or Tucker Act. To the extent that Mr. Waters argues that the Marine Corps failed to prosecute the gunnery sergeant for domestic violence or other criminal activity, these issues are unrelated to this case. To the extent that Mr. Waters alleges that he was the victim of unfair prejudice or bias, Mr. Waters has not adequately demonstrated that this prejudice or bias would have affected the outcome of the Secretary's retirement decision. As the Court of Federal Claims points out, Mr. Waters was advised by counsel, voluntarily admitted to the charges, and elected not to appeal the imposition of non-

judicial punishment or make a statement for the record. Further, the record does not reflect that Colonel Henry, who Mr. Waters alleges had a close relationship with the gunnery sergeant, was involved in any decision-making related to Mr. Waters's retirement. Absent any plausible allegation of undue influence or coercion in his decision to voluntarily retire, it is unclear how Mr. Waters's allegations raise a right to relief under the relevant statutes.

Beyond these allegations, however, Mr. Waters identifies as the pivotal element of the case his e-mail to the Office of the General Counsel requesting an emergency delay in his retirement. Mr. Waters argues that his decision to retire became involuntary once he sent the e-mail. As the Court of Federal Claims pointed out, however, Mr. Waters was fully aware that a request for voluntary retirement "can only be withdrawn with the permission of the Secretary of the Navy." S. App'x 64. While Mr. Waters was understandably frustrated at the General Counsel's lack of response, the decision to accept Mr. Waters's emergency delay was entirely at the Secretary's discretion. Therefore, his request to the General Counsel was insufficient to render involuntary Mr. Waters's voluntary retirement.

Finally, Mr. Waters argues that Lieutenant General Flynn misused the terms "adultery" and "within his command" in his endorsement of Mr. Waters's voluntary retirement request. Repeating the argument he presented below, Mr. Waters contends that under paragraph 2(c) of Enclosure 6 to SECNAVINST 1920.6C, he has the right to review and comment on "[a]ny new factual material" put on the record pertaining to a voluntary retirement request. According to Mr. Waters, Lieutenant General Flynn's statement that Mr. Waters was being investigated for "an inappropriate personal relationship . . . [with] the wife of a gunnery sergeant within his command" constituted new factual material because there had been no admission that the gunnery sergeant was within his command. Likewise, Mr. Waters argues that Lieutenant General Flynn's

statement that the investigating officer found that he "was involved in an adulterous relationship" constituted new factual material because he had never been formally charged with adultery, nor had the word "adultery" or "adulterous" ever been used in the context of the non-judicial punishment proceedings.

We agree with the Court of Federal Claims that these statements do not constitute new factual material. When read in context, it is clear that Lieutenant General Flynn used the phrase "within his command" to describe the gunnery sergeant as subordinate to Mr. Waters. Similarly, we conclude that, when read in context, "adulterous relationship" was used to describe an "inappropriate relationship of a sexual nature" between two married adults. Both of these facts are clearly established on the record. This interpretation is further supported by the fact that the Commandant, after reviewing Lieutenant General Flynn's recommendation, accurately characterized Mr. Waters's conduct as an "inappropriate relationship of a sexual nature with the wife of a Marine gunnery sergeant." S. App'x 92. Mr. Waters has therefore failed to establish a procedural violation that would entitle him to relief.

## CONCLUSION

We have reviewed Mr. Waters's remaining arguments and find them unpersuasive. We discern no reversible error in the Court of Federal Claims' decision. The decision is affirmed.

## AFFIRMED

### COSTS

No costs.